TRB:ems 04-227 5/25/05

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RGP DENTAL, INC. | : | |
| | : | |
| V. | : | C.A. No. 04-445 ML |
| | : | |
| CHARTER OAK FIRE INSURANCE COMPANY | : | |
| | : | |

**RGP DENTAL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER RULE 56**

Now comes plaintiff, RGP Dental, Inc. ("RGP") and, in accordance with F.R.Civ.P. 56(a), moves this Honorable Court for an order granting partial summary judgment as to Count I of its complaint. Count I asserts defendant Charter Oak Fire Insurance Company, ("Charter Oak") breached its insurance contract by refusing to provide a defense to a lawsuit filed against RGP in the United States District Court for the Western District of North Carolina. RGP asks this Court to enter an order granting partial summary judgment finding Charter Oak has breached its contractual duty to defend RGP.

RGP submits the accompanying Rule 12.1 Statement of Undisputed Facts and Memorandum of Law in support of the motion.

Plaintiff,
RGP Dental, Inc.
By its Attorneys,

HANSON CURRAN LLP

David P. Whitman (by TRB)

David P. Whitman, Esq. #0552

Thomas R. Bender

Thomas R. Bender, Esq. #2799
146 Westminster Street
Providence, RI 02903-2202
(401) 421-2154 – telephone
(401) 521-7040- fax

**PROOF OF SERVICE**

I hereby certify that on this __1__ day of June, 2005, I served the within document by mailing a copy of same to **James A. Ruggieri, Esq.**, Higgins, Cavanagh & Cooney, LLP, The Hay Building, 123 Dyer Street, Providence, RI 02903-3987 and **Laura A. Brady, Esq., Frederick P. Marczyk, Esq.**, Drinker Biddle & Reath LLP, 500 Campus Drive, Florham Park, NJ 07932-1047.

Thomas R. Bender

of Hanson Curran LLP

FILED
JUN 01 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

TRB:ems/mdb 04-227 5/25/05

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RGP DENTAL, INC.

VS. C.A. No. 04-445 ML

CHARTER OAK FIRE INSURANCE
COMPANY

**PLAINTIFF, RGP DENTAL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Introduction**

Plaintiff, RGP Dental, Inc. ("RGP") has filed a motion for partial summary judgment in accordance with F.R. Civ. P. 56(a) and seeks, initially, to enforce defendant, Charter Oak Fire Insurance Company's ("Charter Oak") duty to defend RGP in a December 2002 action filed by Support Design AB ("Support Design"). In that lawsuit Support Design asserts RGP has infringed its legal rights in a trademarked seat design for dental chairs, a seat design the relevant consuming public and trade has come to associate with their company. Support Design claims RGP's use of the seat design in marketing, promoting and selling its own chairs, has diminished both Support Design's sales and the goodwill associated with its seat design. RGP steadfastly denies the allegations by Support Design as to wrong doing on the part of RGP, but the duty to defend is, of course, determined by the claims made against the insured, not the insured's response.

RGP asserts the terms of the policy at issue, when read as the ordinary purchaser of insurance would read them and with any ambiguities construed in favor of the insured and coverage, encompass the allegations of the complaint. Support Design's claimed injury constitutes the "infringement of . . . [its] title," in the trademarked seat design, and its damages for this injury occurred during, and as a result of, "advertising activities" conducted by RGP.

RGP therefore asks this Court to find Charter Oak is required to defend the underlying lawsuit on behalf of its insured, RGP Dental, Inc.

## Statement of the Case[1]

*Allegations of the Support Design Complaint*

Support Design is a foreign corporation based in Sweden which manufactures and sells "high-end dental chairs." (Exh. A). It claims to have widely and extensively advertised, promoted and sold dental chairs incorporating a "trademarked seat design." (*Id.* at 2). Support Design claims that the seat design is "distinctive" and supported by a trademark registration certificate. (*Id.*). The design

> has become associated with a particular type of dental chair originating from . . . Support Design, and is advertised, promoted and marketed as such. The relevant consuming public and trade have thereby long since come to recognize the Seat Design, and to identify and associate said Seat Design with a single source of origin.

[1] The facts set forth in this section are taken from the Rule 12.1 statement of undisputed facts. Although the allegations set forth in the underlying lawsuit are set forth as "facts" herein, any claims Support Design of wrong doing by RGP in the underlying lawsuit, have been denied by RGP.

(*Id.* at 2). The distinctive elements of the seat design allegedly include "the seat's being angled forward with a rounded and upward slanted edge on the back and sides of the seat cushion, and the seat-back's being curved inward on the sides." (*Id.* on 2-3). Support Design alleges RGP – a Rhode Island corporation with a principal place of business in Bristol, R.I. -- has marketed, manufactured, distributed and sold dental chairs "incorporating an exact copy of the trademarked [s]eat [d]esign * * * throughout the United States through a variety of marketing and distribution channels." (*Id.* at 3, 4, 5, 7). Support Design claims that RGP's actions included attending a trade show in North Carolina December 2002 "for the purpose of marketing and selling" chairs incorporating the distinctive seat design. (*Id.*).

Support Design alleges in Count I that RGP's manufacture, sale and distribution of the dental chairs incorporating the seat design "is likely to cause confusion or mistake and to deceive consumers as to the origin, sponsorship, and/or nature of the dental chairs," and is a violation of Support Design's legal rights in the trademarked design, constituting trademark infringement under 15 U.S.C. §1114. (*Id.* at 4).

In Count II of its complaint, Support Design alleges RGP has engaged in unfair competition by promoting marketing, manufacturing, distributing and selling dental chairs incorporating "an exact duplication of the [s]eat [d]esign, in a manner" that falsely designates the chairs originated with, or are associated with, Support Design. (*Id.* at 5). The marketing and promotion of the chairs by RGP allegedly "diverted sales from Support Design" and "severely damaged [the] goodwill[,]" associated with the design. (*Id.* at 5). Support Design asserts this false designation of origin claim constitutes unfair competition in violation of U.S.C. §1125(a).

Support Design alleges in Count III that RGP's use of the seat design mark in promoting, marketing and selling its chairs trades on the mark's goodwill associated with Support Design,

which infringes on Support Design's common law rights in the mark and constitutes unfair competition. (*Id.* at 6). In Count IV of its complaint, Support Design repeats those allegations and alleges a cause of action under North Carolina's Unfair Trade Practices Act. (*Id.* at 7).

As a result of these allegations, Support Design seeks damages and an injunction requiring RGP to: 1) refrain from "manufacturing, distributing, advertising, promoting, offering for sale, or selling goods," that incorporate the seat design or any other similar mark that would be likely to cause confusion as to the origin of the design; 2) "[p]assing off" RGP's chairs as Support Design products; or 3) "[p]assing itself off as the owner of the [s]eat [d]esign" or creating the impression that the chairs came from Support Design. (*Id.* at 8).

*Pertinent Policy Provisions*

In April 2002 Charter Oak Fire Insurance Company issued a Manufacturers Policy to RGP for the period of May 1, 2002 to May 1, 2003, which included liability coverage entitled "WEB XTEND." (Exh. B at 4). The pertinent insuring agreement provides that Charter Oak "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury', 'advertising injury' or 'web site injury' to which this insurance applies[, and w]e will have the right and duty to defend the insured against any 'suit' seeking those damages." (*Id.* at 4).

"Advertising injury" is defined by the policy to mean, *inter alia*, injury arising out of the "[i]nfringement of copyright, title or slogan," (*Id.* at 5), and "caused by an offense committed in the course of advertising [the insured's] goods, products or services[.]" (*Id.* at 4).

In the underlying lawsuit, Support Design claims damages due to infringement of its legal rights and title in the trademarked seat design, which occurred in the course of, and due to,

RGP's advertising activities. Such claims for damages therefore fall within the coverage of the policy. Charter Oak owes RGP a duty to defend the underlying lawsuit.

## Argument

**I.) An insurer has an unequivocal duty to defend the entire underlying complaint if the complaint asserts any claim potentially within the policy coverage.**

In an action such as this based on diversity of citizenship this Court applies the law of the forum in which it sits, including the forum's choice of law rules. *Nortek, Inc. v. Liberty Mutual Insurance Co.*, 858 F. Supp. 1231, 1235 (D.R.I. 1994). Rhode Island's general choice of law principles require the Court to analyze which forum's law holds the most appropriate relationship to the underlying transaction at issue, *id.* (citing *Gordon v. Clifford Metal Sales Co.*, 602 A.2d 535, 538-39 (R.I. 1992)), and where the issue concerns a foreign insurer's duty to defend a Rhode Island insured, "Rhode Island law is clearly the most appropriate . . . because of Rhode Island's interest in establishing uniform rules governing the rights of insurance policyholders within this state, and the duties of foreign insurance companies who do business with residents of this state." 858 F.Supp. at 1235.

A liability insurer has two distinct duties under Rhode Island law -- the duty to defend and the duty to indemnify, *O'Donnell v. Twin City Fire Insurance Company*, 40 F.Supp.2d 68, 71 (D.R.I. 1999). The duty to defend is, as in virtually every other state, broader than the duty to indemnify. *Id.*; *Mellow v. Medical Malpractice Joint Underwriting Association of Rhode Island*, 567 A.2d 367, 368 (R.I. 1989); *Employers' Fire Insurance Co. v. Beals*, 103 R.I. 623, 240 A.2d 397 (1968). Under Rhode Island law, the insurer's duty to defend is determined by applying the "pleadings test." *American Commerce Insurance Company v. Porto*, 811 A.2d 1185, 1101 (R.I. 2002). That test requires the trial court to determine:

> whether the complaint in the underlying action alleges facts and circumstances bringing the case within the coverage afforded by

> the policy. That question is resolved by comparing the complaint in that action with the policy issued by the insurer; *if the complaint discloses a statement of facts bringing the case potentially within the risk coverage* of the policy the insurer will be duty-bound to defend irrespective of whether the plaintiffs in the tort action can or will ultimately prevail.

*Flori v. Allstate Insurance Company*, 120 R.I. 511, 513, 388 A.2d 25, 26 (1978) (emphasis added). The test is whether the underlying complaint raises the *possibility* of coverage, *O'Donnell*, 40 F.Supp.2d at 71 (emphasis added), and "any doubts as to the adequacy of the pleadings to encompass an occurrence within the scope of the policy must be resolved in the insured's favor." *Allstate Insurance Co. v. Russo*, 641 A.2d 1304, 1306 (R.I. 1994).[2] Moreover, "[i]f any of the acts or omissions alleged in the . . . [c]omplaint could possibly be covered under the insurance policy, then [the insurer] has an unequivocal duty to defend . . . against all the claims asserted." *O'Donnell*, 40 F.Supp.2d at 76.[3]

**II.) The complaint alleges covered "advertising injury" damages caused by RGP's advertising activities.**

In assessing the relevant language of an insurance policy the Rhode Island Supreme Court affords the terms their plain, ordinary and usual meaning. *Town of Cumberland v. Rhode Island*

---

[2] *Accord, Providence Journal Company v. Travelers Indemnity Company*, 938 F.Supp. 1066, 1072 (D.R.I. 1996); *Foxon Packaging Corp. v. Aetna Casualty and Surety Co.*, 905 F.Supp. 1139, 1142 (D.R.I. 1995); *Flori v. Allstate Insurance Co.*, 120 R.I. at 514-15, 388 A.2d at 27; *Employers' Fire Insurance Company v. Beals*, 103 R.I. at 632, 290 A.2d at 402-03.

[3] *Accord, American Home Assurance Company v. United Space Alliance, LLC*, 378 F.3d 482, 488 (5th Cir. 2004) (applying Texas law); *State Auto Property and Casualty Insurance Company v. Travelers Indemnity Company of America*, 343 F.3d 249, 255 (4th Cir. 2003) (applying North Carolina law); *Home Insurance Company v. St. Paul Fire & Marine Insurance Company*, 229 F.3d 56, 65-66 (1st Cir. 2000) (applying Maine law); *Nortek, Inc. v. Liability Mutual Insurance Co.*, 858 F.Supp. at 1235, n. 14 (applying to Rhode Island law and describing as majority rule).

*Interlocal Risk Management Trust, Inc.*, 860 A.2d 1210, 1215 (R.I. 2004). The Court does not look to what the insurer intended by the words, however, but rather, to what the ordinary reader and purchaser would have understood them to mean. *Id.*; *American Commerce Insurance Company v. Porto*, 811 A.2d at 1192; *Pressman v. Aetna Casualty and Surety Co.*, 574 A.2d 757, 760 (R.I. 1990). If, viewed in that light, the terms are reasonably capable of more than one meaning, the terms are considered legally ambiguous and will be strictly construed in favor of coverage for the insured. *Town of Cumberland*, 860 A.2d at 1215.[4]

RGP asserts Charter Oak had, and has, a duty to defend the action brought by Support Design AB under the "advertising injury" coverage of the policy. To prevail on that claim RGP must satisfy a three part test. First, "the suit must have alleged a cognizable advertising injury;" second, "the infringing party [RGP] must have engaged in advertising activity;" and third, "there must have been some causal connection between the advertising injury and the advertising activity[.]" *State Farm Fire and Casualty Company v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004). All three parts of the test are satisfied here.

**A.) Support Design's complaint alleges an injury within the meaning of "[i]nfringement of copyright, title or slogan."**

One form of "advertising injury" covered by the policy is the "[i]nfringement of copyright, title or slogan." To determine the meaning this Court must ascribe to these terms, and their applicability to the injury claimed by Support Design, this Court must examine what the ordinary reader and purchaser would have understood such terms to mean, and, if they are

[4] *Accord, Sjogren v. Metropolitan Property and Casualty Insurance Company*, 703 A.2d 608, 610 (R.I 1997); *Textron, Inc. v. Aetna Casualty and Surety Company*, 631 A.2d 537, 539 (R.I. 1994); *Amica Mutual Insurance Company v. Streiker*, 583 A.2d 550, 552 (R.I. 1990).

reasonably susceptible of more than one meaning, the Court is obligated to apply the meaning more favorable to the insured. An appropriate place to begin that inquiry is the dictionary definition of the terms.

In common usage, the form "copyright" refers to "[t]he *legal right* granted to an author, a composer, a playwright, a publisher, or a distributor to exercise exclusive publication, production, sale, or distribution of a literary, musical, dramatic or artistic work." *The American Heritage Dictionary of the English Language* (3rd ed. 1992) at 416 (emphasis added). Similarly, while "title" sometimes refers to "[a]n identifying name . . . or descriptive heading," *id.* at 1881, it also commonly signifies:

> The coincidence of all the elements that constitute the fullest *legal right* to control and dispose of property or a claim * * * [t]he aggregate evidence that gives right to a *legal right* of possession or control * * * [s]omething that provides a basis for or justifies a claim . . . [a] legitimate or alleged right.

*Id.* (Emphasis added). Consequently, while the common meaning of "title" may reasonably cause the ordinary reader of the policy to think of an identifying name or descriptive heading, it may also reasonably cause the ordinary reader to think of a legal or ownership right in something, just as a "copyright" connotes a legal right in an artistic or literary work. Here Support Design's claims are premised on a "trademarked seat design," supported by a trademark registration certificate "that has become associated with a particular type of dental chair originating from . . . Support Design." Support Design alleges it has "rights in and to the Seat Design trademark under 15 U.S.C. §1114[,]" as well as under the common law. (Comp. at 2, 4, 6).

Moreover, "infringement" is commonly thought of as "[a]n encroachment, as of a right or privilege." *American Heritage Dictionary, supra* at 927. Synonymous with the term breach, "[i]nfringement is most frequently used specifically to denote encroachment on another's right,

such as those granted by a copyright," *Id.* at 233. The entire premise of Support Design's claims is that RGP has illegally infringed upon its exclusive legal right to use the distinctive seat design.

"Infringement of title" may therefore be reasonably read to include "infringement of either a business name *or [the ownership of] property." Sentex Systems, Inc. v. Hartford Accident & Indemnity Co.*, 882 F.Supp. 930, 944 (C.D. Cal. 1995) (emphasis added), *aff'd*, 93 F.3d 578 (9th Cir. 1996). Support Design's claim for unfair competition under 15 U.S.C. §1125 is essentially a claim that RGP has unlawfully infringed on its legal right to exclusive use of the chair's design, which itself may constitute protectable "trade dress" under section 43 of the Lanham Act (15 U.S.C. §1125), trade dress being a term referring to the total image of a product. *Adolfo House Distributing Corp. v. Travelers Property and Casualty Insurance Co.*, 165 F. Supp.2d 1332, 1337 n. 1 (S.D. Fla. 2001); *accord, Bay Electric Supply, Inc. v. The Travelers Lloyds Insurance Company*, 61 F.Supp.2d 611, 606 n. 1 (S.D. Tex. 1999); *Poof Toy Products, Inc. v. United States Fidelity and Guaranty Company*, 891 F.Supp. 1228, 1232 (E.D. Mich. 1995).

Section 1125 of the Lanham Act prohibits any person from using a term, name, symbol or device, or any combination thereof, which is likely to confuse, mislead or deceive as to the manufacturer, origin or description of a good or service. *Id.* The Lanham Act protects trade dress to "secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers[,]" *Bay Electric Supply, Inc. v. The Travelers Lloyds Insurance Company*, 61 F. Supp.2d at 616 n. 1 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)). The elements that make up a product's trade dress "are capable of acquiring exclusive legal rights as a type of

identifying symbol of origin." *Stephen W. Boney, Inc. v. Boney Services, Inc.*, 127 F.3d 821, 828 (9th Cir. 1997) (quoting 1 *McCarthy on Trademarks and Unfair Competition* §8:1 (4th ed. 1996)).

In short, Support Design has alleged it has exclusive legal right or "title" to the seat design and that it has been damaged by RGP's alleged infringement upon that exclusive legal right or title. Its claim, viewed in the light most favorable to the insured and to coverage, therefore falls within the policy coverage for liability due to "infringement of . . . title[.]"

**B.) RGP's alleged infringement of Support Design's legal rights in the seat design occurred in the context of "advertising activity" by RGP.**

The policy's advertising coverage applies to advertising injury "caused by an offense committed in the course of advertising [RGP's] goods, products or services[.]" Just as the Court was required to do in assessing the meaning of the policy's use of the words "advertising *injury*," to determine whether the alleged infringement of title occurred during an advertising activity, the Court must assess the meaning of the words "advertising *activity*" by determining how the "ordinary reader and purchaser would have understood them[.]" *Town of Cumberland,* 860 A.2d at 1215. If, viewed in that light, the words are capable of more than one reasonable meaning they must be strictly construed in favor of the insured and in the light most favorable to coverage. *Id.*

The common understanding of the term advertising conveys "[t]he activity of *attracting public attention* to a product or a business[.]" *The American Heritage Dictionary of the English Language* (3rd ed. 1992) at 26 (emphasis added). To "advertise" is "[t]o make public announcement of (a product or business) so as to increase sales[,] or "[t]o *call the attention of the public* to a product or a business[.]" *Id.* (Emphasis added). Here Support Design's claim is

based on RGP's use of the trademarked seat design, and that its use of the design in "marketing," (Comp. at 3), the chairs is "likely to cause confusion or mistake and to deceive consumers[,]" either as to the origin of the chairs with the seat design or as to Support Design's endorsement of the chairs offered for sale by RGP. (Exh. A).

Several courts have reasoned that the ordinary reader of such policy would understand an advertising activity to be anything that calls the attention of the public to a product to increase the sales of the product,[5] and that offenses under the Lanham Act that require the use of an infringing mark necessarily involve advertising activities.[6] For example, in *Bay Electric Supply, Inc. v. The Travelers Lloyds Insurance Company*, the underlying complaint alleged that the insured was selling circuit breakers bearing configurations identified with and owned by competitor. 61 F.Supp.2d at 63. The underlying lawsuit complained of the insured's "importation, marketing and/or sale of circuit breakers bearing the infringing reproduction of the configuration marks[.]" *Id.* at 618. As the court explained, "[i]n essence [the insureds] were accused of trading on the good will of ACB by marketing and selling knock-off circuit breakers, thereby injuring ACB." The court concluded that where the complaint alleged "specifically that [the insureds] *marketed* infringing products to deceive the public as to the source, there [was] no doubt that ACB's complaint accused [the insureds] of engaging in unlawful advertising activity." *Id.* at 619. (emphasis added).

---

[5] *See American Employers' Insurance Co. v. DeLorme Publishing Co.*, 39 F. Supp.2d 64, 74 (D. Me. 1999) (advertise means "[t]o call a matter to the public attention by any means whatsoever * * * calling something to the attention of the public."); *Bay Electric Supply, Inc. v. The Travelers Lloyds Insurance Company*, 61 F.Supp.2d 611, 618 (S.D. Tex. 1999) ("To call a matter to the public attention by any means whatsoever");

[6] *DeLorme*, 39 F. Supp.2d at 74; *Gemmy Industries Corporation*, 190 F.Supp.2d at 919; *Pogloo, Inc. v. Northern Insurance Company of New York*, 907 F. Supp. 1383, 1391 (C.D. Cal. 1995).

Similarly, in *Gemmy Industries Corporation v. Alliance General Insurance Company*, the insured was sued for false designation of origin and trade dress infringement under 15 U.S.C. §1125(a). The complaint "specifically alleged numerous ways in which the design and appearance of [the insured's] product mimicked [the plaintiff's] and caused customer confusion." 190 F. Supp.2d at 919. Therefore the court concluded the insured "was sued for using this trade dress to 'call public attention' to its product" and that "[s]uch a use constituted an advertising activity." *Id.* The court even posited that "it is impossible to allege a Lanham Act claim without the infringing mark being used to identify the goods or services to the public." *Id.* at 919 (quoting *J.A. Brundage Plumbing & Roto-Rooter, Inc. v. Massachusetts Bay Ins.*, 818 F.Supp. 553, 558 (W.D.N.Y. 1994)).

A trademark, by its very nature, identifies and distinguishes the trademark holder's product and plays an important role in advertising a company's product, and thus "at the very least, a trademark has the potential to be an advertising idea." *State Auto Property and Casualty Insurance Company v. Travelers Indemnity Company of America*, 343 F.3d 249, 257-58 (4th Cir. 2003); *accord, Frog Switch & Manufacturing Co., Inc. v. The Travelers Insurance Company*, 193 F.3d 742, 749 (3rd Cir. 1999). A trademark is a way of marketing goods so that they will be identified with a particular source, and it "depends for its effectiveness on communicating a message to consumers about the marked good, which is the essence of advertising[.]" *Id.* It is therefore not surprising that "some courts have found that passing off, trademark, trade name or trade dress infringement claims implicitly involve advertising activity, because such claims necessarily involve use of the mark to identify and promote the insured's goods or services to a substantial number of people." *Adolfo House Distributing Corp. v. Travelers Property and Casualty Insurance Co.*, *supra*, 165 F.Supp.2d at 1339 (S.D. Fla. 2001).

Moreover, Support Design's complaint specifically references RGP's "marketing" of the infringing dental chairs incorporating the trademarked design, and seeks an injunction requiring RGP to refrain from advertising them. (Compl. at 3, 8). "Advertising is a commonly used method of marketing." *DeLorme*, 39 F. Supp.2d at 75. "Where a claim alleges that the marketing of a knock-off product results in harm, it would be artificial to deny coverage by constructing a distinction between injuries arising from the *marketing* of infringing goods and injuries arising from the display or *advertising* of the goods." *Id.* (Emphasis in original); *see also Poof Toy Products, Inc.*, 891 F.Supp. at 1235.

By marketing and promoting chairs incorporating the trademarked seat design, both the act of incorporating the seat design itself -- as one associated with Support Design -- and the act of promoting and marketing to the relevant consuming public chairs incorporating the seat design, constituted acts designed to call attention to the chairs and to the design in order to increase sales. By allegedly using the trademarked design to call the public's attention to its chairs, RGP was engaged in an "advertising activity."

**C.) The alleged damages for infringement of Support Design's rights in the trademarked seat design were caused by RGP's advertising activity.**

While the policy requires that the injury for which coverage is sought be caused by the insured's advertising activity, such advertising activities need not be the only cause of injury. *Sentex Systems, Inc. v. Hartford Accident & Indemnity Co.*, *supra*, 882 F.Supp. at 945. In determining whether a causal connection exists between the advertising activity and the advertising injury courts must still apply the "potential for liability" standard – "[i]f even part of

a cause of action is arguably within the scope of the coverage, the insurer must defend." *Id.* (internal citation omitted).

Here, in addition to alleging that the manufacture, distribution and sale of the trademarked seat design injured Support Design, the complaint alleges that the marketing and promotion of RGP chairs incorporating the seat design also caused Support Design injury. (Exh. A at 5-7). The marketing and promotion of the chairs by RGP allegedly "diverted sales from Support Design" and "severely damaged [the] goodwill[,]" associated with the design, (Exh. A at 5), and Support Design specifically asks that RGP be enjoined from advertising chairs incorporating the seat design. (Exh. A at 8). As argued in the previous section, advertising is a form of marketing and is embraced by that term. Consequently, under the allegations of the complaint, the damages sustained by Support Design are allegedly due to the advertising and marketing of RGP's chairs, giving rise to the Charter Oak's duty to defend.

Moreover, as also established in the previous section, incorporating the trademarked design in the chairs is itself an advertising activity, because to cause confusion to the purchaser as to the origin or manufacture of the goods "one must clearly advertise (announce to the intended customers) the mark or dress." *Poof Toy Products, Inc.*, 891 F.Supp. at 1236. Consequently the confusion – which is the basis of the injury claimed – is directly caused by an advertising activity, both by the act of incorporating the distinctive seat back design in RGP's chairs and the act of marketing and promoting the chairs with the design to the relevant public and market.

## Conclusion

For the above-stated reasons, RGP Dental, Inc., asserts the damages claimed in Support Design's underlying lawsuit potentially constitute covered advertising injuries that were caused by RGP's own advertising activity, and Charter Oak had, and has, a duty to defend RGP in the underlying action.

Plaintiff,
RGP Dental, Inc.
By its Attorneys,

HANSON CURRAN LLP

David P. Whitman (by TRB)

David P. Whitman, Esq. #0552

Thomas R. Bender

Thomas R. Bender, Esq. #2799
146 Westminster Street
Providence, RI 02903-2202
(401) 421-2154 – telephone
(401) 521-7040- fax

## PROOF OF SERVICE

I hereby certify that on this __1__ day of June, 2005, I served the within document by mailing a copy of same to **James A. Ruggieri, Esq.**, Higgins, Cavanagh & Cooney, LLP, The Hay Building, 123 Dyer Street, Providence, RI 02903-3987 and **Laura A. Brady, Esq.**, **Frederick P. Marczyk, Esq.**, Drinker Biddle & Reath LLP, 500 Campus Drive, Florham Park, NJ 07932-1047.

Thomas R. Bender

of Hanson Curran LLP