**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RGP DENTAL, INC., Plaintiff, v. CHARTER OAK FIRE INSURANCE COMPANY, Defendant. | : | Civil Action No.: 04-CV-445 ML |

# DEFENDANT CHARTER OAK FIRE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

James A. Ruggieri, Esq.
HIGGINS, CAVANAGH & COONEY, LLP
The Hay Building
123 Dyer Street
Providence, R.I. 02903-3987
Phone: (401) 272-3500
Facsimile: (401) 273-8780
Attorneys for Defendant
Charter Oak Fire Insurance Company

OF COUNSEL:
William T. Corbett, Jr.
Frederick P. Marczyk
DRINKER BIDDLE & REATH LLP
A Pennsylvania Limited Liability Partnership
500 Campus Drive
Florham Park, New Jersey 07932
Phone: (973) 360-1100
Facsimile: (973) 360-9831

# TABLE OF CONTENTS


Page

**TABLE OF AUTHORITIES** ..... iii

**PRELIMINARY STATEMENT** ..... 1

**STATEMENT OF FACTS** ..... 1

A. The Underlying Action. ..... 1

B. RGP's Tender of the Underlying Action to Charter Oak ..... 3

C. The Charter Oak Policy ..... 3

**LEGAL ARGUMENT** ..... 4

**I. APPLICABLE STANDARDS AND THE DUTY TO DEFEND** ..... 4

A. Summary Judgment Standard ..... 4

B. Rhode Island Rules of Insurance Contract Interpretation. ..... 4

**II. THE "ADVERTISING INJURY" PROVISIONS OF THE POLICY AFFORD NO COVERAGE FOR THE UNDERLYING ACTION** ..... 5

A. The Underlying Complaint Does Not Potentially Allege "Advertising Injury." ..... 6

B. The Underlying Complaint Does Not Allege An "Advertising Injury" Caused By An Offense Committed By RGP In The Course Of Advertising. ..... 10

**III. THE POLICY EXCLUDES COVERAGE** ..... 12

A. The "Knowledge of Falsity" Exclusion Bars Coverage Because The Underlying Complaint Is Premised Without Exception Upon Knowing and Willful Misconduct ..... 12

B. The "Violation of a Penal Statute" Exclusion Bars Coverage Because The Underlying Complaint Is Premised Without Exception On Allegedly Willful Conduct That Violates 18 U.S.C. §2320 ..... 15

C. The "Breach of Contract" Exclusion Bars Coverage Because The Injuries Alleged In The Underlying Action Arose Out Of RGP's Breach Of The Distribution Agreement ..... 15

D. The "Failure of Goods" Exclusion Bars Coverage Because The Underlying Complaint Alleges RGP Created A False Impression That The Counterfeit Chairs Were Affiliated With Support Design When, In Fact, They Were Not ..... 17

**IV. RGP CANNOT CLAIM COVERAGE UNDER THE POLICY BECAUSE IT BREACHED THE NOTICE CONDITIONS OF THE POLICY.** ..... 17

**V. THE KNOWN LOSS DOCTRINE BARS COVERAGE UNDER THE POLICY ........ 20**

CONCLUSION........20

## TABLE OF AUTHORITIES

**CASES** **PAGE**

ABB Flakt, Inc. v. Nat'l Union Fire Ins. Co.,
1998 Del. Super. LEXIS 310 (Del. Super. June 10, 1998),
aff'd, 731 A.2d 811 (Del. 1999) ....................8

A.J. Sheepskin and Leather Co. v. Colonia Ins. Co.,
709 N.Y.S.2d 82 (N.Y. App. Div. 2000) ....................13, 14

Am. Commerce Ins. Co. v. Porto,
811 A.2d 1185 (R.I. 2002) ....................16

Associated Indep. Dealers, Inc. v. Mut. Serv. Ins. Co.,
229 N.W.2d 516 (Minn. 1975) ....................16

Atl. Mut. Ins. Co. v. Terk Techs. Corp.,
763 N.Y.S.2d 56 (N.Y. App. Div. 2003) ....................12

Atl. Mut. Ins. Co. v. Brotech Corp.,
857 F. Supp. 423 (E.D.Pa. 1994), aff'd, 60 F.3d 813 (3d Cir. 1995) (Table) ....................6, 8

Auto Sox USA, Inc. v. Zurich N. Am.,
88 P.3d 1008 (Wash. Ct. App. 2004) ....................8

Avco Corp. v. Aetna Cas. & Sur. Co.,
679 A.2d 323 (R.I. 1996) ....................18, 19

Bartholomew v. Appalachian Ins. Co.,
655 F.2d 27 (1st Cir. 1981) ....................20

Borden v. Paul Revere Life Ins. Co.,
935 F.2d 370 (1st Cir. 1991) ....................4

Callas Enters., Inc. v. Travelers Indem. Co. of Ill.,
193 F.3d 952 (8th Cir. 1999) ....................6,14,15,16

Carney v. Village of Darien,
60 F.3d 1273 (7th Cir. 1995) ....................15

Direct Focus, Inc. v. Admiral Ins. Co.,
81 Fed. Appx. 263, 2003 U.S. App. LEXIS 23628 (9th Cir. Nov. 7, 2003) ....................20

Dodge v. Legion Ins. Co.,
102 F. Supp. 2d 144 (S.D.N.Y. 2000) ....................14

Ekco Group, Inc. v. Travelers Indem. Co. of Ill,
273 F.3d 409 (1st Cir. 2001) ....................6,11,12

## TABLE OF AUTHORITIES
(Continued)

**CASES** **PAGE**


Employers Mut. Cas. Co. v. PIC Contractors, Inc.,
24 F. Supp. 2d 212 (D.R.I. 1998) ....................5, 13

Gereboff v. Home Indem. Co.,
383 A.2d 1024 (R.I. 1978) ....................5

Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.,
97 F. Supp. 2d 913 (S.D. Ind. 2000) ....................6,7

Julian v. Liberty Mut. Ins. Co.,
682 A.2d 611 (Conn. App. Ct. 1996) ....................8,10

Lumbermens Mut. Cas. Co. v. Dillon Co.,
9 Fed. Appx. 81, 2001 U.S. App. LEXIS 11003 (2d Cir. May 25, 2001) ....................10

Martinelli v. Travelers Ins. Cos.,
687 A.2d 443 (R.I. 1996) ....................4

Maxconn, Inc. v. Truck Ins. Exch.,
74 Cal. App. 4th 1267 (1999) ....................9

Merchants Co. v. Am. Motorists Ins. Co.,
794 F. Supp. 611 (S.D.Miss. 1992) ....................9

Mulberry Square Prods. v. State Farm Fire & Cas.,
101 F.3d 414 (5th Cir. 1996) ....................12, 14

Mullane v. Holyoke Mut. Ins. Co.,
658 A.2d 18 (R.I. 1995) ....................5

Nortek, Inc. v. Liberty Mut. Ins. Co.,
858 F. Supp. 1231 (D.R.I. 1994) ....................10

O. Ahlborg & Sons, Inc. v. Travelers Indem. Co.,
694 A.2d 750 (R.I. 1997) ....................19

Owens-Brockway Glass Container, Inc. v. Int'l Ins. Co.,
884 F. Supp. 363 (E.D. Cal. 1995), aff'd, 94 F.3d 652 (Table) ....................9

Pa. Pulp & Paper Co. v. Nationwide Mut. Ins. Co.,
100 S.W.3d 566 (2003 Tex. Ct. App.) ....................16

Peerless Ins. Co. v. Viegas,
667 A.2d 785 (R.I. 1995) ....................5, 14

## TABLE OF AUTHORITIES
(Continued)

**CASES** **PAGE**

Pickering v. Am. Employers Ins.,
282 A.2d 584 (R.I. 1971) ........ 18, 19

Precision Automation, Inc. v. W. Am. Ins. Co.,
203 F.3d 832 (Table), 1999 U.S. App. LEXIS 31378 (9th Cir. Oct. 8, 1999) ........ 8, 10

Scalise v. Metro. Group Prop. & Cas. Ins. Co.,
85 Fed. Appx. 256, 2004 U.S. App. LEXIS 504 (2d Cir. Jan. 14, 2004) ........ 15

Sentex Sys., Inc. v. Hartford Accident & Indem. Co.,
882 F. Supp. 930 (C.D. Cal. 1995), aff'd, 93 F.3d 578 (9th Cir. 1996) ........ 9

Sholodge, Inc. v. Travelers Indem. Co. of Ill.,
168 F.3d 256 (6th Cir. 1999) ........ 6, 8

Southstar Corp. v. St. Paul Surplus Lines Ins. Co.,
42 S.W.3d 187 (Tex. Ct. App. 2001) ........ 16

St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys. Inc.,
824 F. Supp. 583 (E. D. Va. 1993) ........ 8

Sunex Int'l, Inc. v. Travelers Indem. Co. of Ill.,
185 F. Supp. 2d 614 (D.S.C. 2001) ........ 6, 8

Support Design AB v. RGP Dental, Inc.,
Case No. 3:02cv520-MU ........ 1

Textron, Inc. v. Aetna Cas. & Sur. Co.,
638 A.2d 537 (R.I. 1994) ........ 5, 8

Town of Cumberland v. R.I. Interlocal Risk Mgmt. Trust, Inc.,
860 A.2d 1210 (R.I. 2004) ........ 4, 5, 20

U.S. Test, Inc. v. N D E Envt'l Corp.,
196 F.3d 1376 (Fed. Cir. 1999) ........ 8,9

Zurich Ins. Co. v. Sunclipse, Inc.,
85 F. Supp. 2d 842 (N.D. Ill. 2000), aff'd, 241 F.3d 605 (7th Cir. 2001) ........ 7, 9

**STATUTES**

18 U.S.C. §2320 ........ 15

**RULES**

Fed. R. Civ. P. 56(c) ........ 4

## PRELIMINARY STATEMENT

Defendant Charter Oak Fire Insurance Company ("Charter Oak") respectfully submits this memorandum in support of its Motion for Summary Judgment. Charter Oak seeks a declaration that it owes no duty to defend or indemnify plaintiff RGP Dental, Inc. ("RGP") in connection with an underlying trademark infringement lawsuit filed against RGP by Support Design, AB ("Support Design") in the United States District Court for the Western District of North Carolina and styled Support Design AB v. RGP Dental, Inc., Case No. 3:02cv520-MU (the "Underlying Action"). RGP claims Charter Oak is obligated to defend RGP in the Underlying Action pursuant to the "advertising injury" provisions of an insurance policy issued by Charter Oak; however, no allegations in the Underlying Action potentially fall within the ambit of the "advertising injury" coverage grant. Even if they did, moreover, various exclusions bar coverage. Further, RGP's failure to provide timely notice of the Underlying Action bars recovery under the policy issued by Charter Oak. Finally, the known loss doctrine bars coverage because RGP knew, prior to the inception of the policy issued by Charter Oak, that Support Design claimed RGP was infringing on Support Design's trademark rights. No material facts are in dispute. As a matter of law, Charter Oak is entitled to a declaratory judgment that it has no obligation to defend or indemnify RGP in connection with the Underlying Action.

## STATEMENT OF FACTS

### A. The Underlying Action.

RGP is a corporation that manufactures and sells dental chairs and engages in domestic and international business activities, often pursuant to complex contracts with other companies engaged in international business. See ¶2 of Charter Oak's Statement Of Undisputed Material Facts ("Material Facts"). In December 2002, RGP was served with the complaint filed by Support Design in the Underlying Action (the "Underlying Complaint"). Id. ¶3.

The Underlying Complaint contains counts for trademark infringement, unfair competition, and unfair trade practices. Id. ¶4. Those claims are premised on the following allegations: Until December 2001, RGP was authorized pursuant to a distribution agreement (the "Distribution Agreement") to sell dental chairs incorporating Support Design's trademarked dental chair design (the "Trademarked Seat Design"). Id. ¶5. As part of that agreement, RGP acknowledged Support Design's ownership rights in the Trademarked Seat Design. Id. ¶6. In December 2001, the Distribution Agreement was canceled because RGP breached its terms. Id. ¶7. Despite losing its legal right to use the Trademarked Seat Design, RGP "began manufacturing (or having manufactured on its behalf) and has continued to distribute and sell dental chairs incorporating an exact copy of the [T]rademarked Seat Design" (the "Counterfeit Chairs"). Id. ¶8. "At all relevant times," RGP was aware of Support Design's exclusive rights in the Trademarked Seat Design. Id. ¶9. "RGP has acted with full knowledge of Support Design's rights, with the intention to usurp such rights, and with the knowledge that such acts are causing confusion or are likely to cause confusion." Id. ¶10. RGP's acts "are . . . intentional and willful." Id. "RGP has utilized the Seat Design with full prior knowledge of the Seat Design trademark, and RGP's use of that mark was and is for the willful and calculated purpose of trading on the trademark's goodwill." Id. See also id. (RGP had "knowledge of such false designation of origin or description" and "willfully promoted . . . the sale of its Counterfeit Chairs . . . in a manner so as to designate falsely Support Design as the origin."); id. (RGP has marketed and sold Counterfeit Chairs in such a manner so as inevitably to suggest an association, affiliation, or sponsorship with, or approval by, Support Design."). "Support Design has objected to RGP's unauthorized manufacture, distribution and sale of its Counterfeit Chairs, but RGP has continued to do so despite these objections." Id. ¶11.

**B. RGP's Tender of the Underlying Action to Charter Oak.**

RGP first learned of Support Design's claims of trademark infringement when it received two letters from Support Design in February 2002. Id. ¶12. Then, in March 2002, counsel for Support Design sent a letter to RGP threatening legal action if RGP did not stop using the Trademarked Seat Design. Id. ¶13. In December 2002, Support Design filed the Underlying Complaint. In March 2003, RGP was served with court papers filed by Support Design in Germany over RGP's use of the Trademarked Seat Design. Id. ¶14. In May 2003, RGP was served with new suit papers filed by Support Design in Germany. Id. ¶15. Throughout this time, RGP did not notify or send the Underlying Complaint to Charter Oak. Id. ¶16. Instead, RGP defended the Underlying Action and the German lawsuit itself. Id. ¶17. It was not until more than two years after learning of Support Design's claims, on August 6, 2004, that RGP first notified Charter Oak of Support Design's claims and demanded that Charter Oak defend RGP in the then year-and-a-half-old Underlying Action. Id. ¶18.

**C. The Charter Oak Policy.**

Charter Oak issued to named insured RGP Dental, Inc. Policy No. I-680-766Y0017-COF-02, in effect from May 1, 2002 to May 1, 2003 (the "Policy"). Id. ¶19. Pursuant to Coverage B, the Policy provides, in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "advertising injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "advertising injury" . . . to which this insurance does not apply. . . .

Id. ¶20. The Policy states that the insurance applies only to "'advertising injury' caused by an offense committed in the course of adverting your goods, products or services . . . ." Id. ¶21. The Policy excludes coverage for "advertising injury" arising out of: (1) "oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of

its falsity"; (2) "the willful violation of a penal statute or ordinance committed by or with the consent of the insured; (3) "[b]reach of contract"; and (4) "[t]he failure of goods, products or services to conform with advertised quality or performance." Id. ¶21.

The Policy defines "advertising injury," in relevant part, as injury, arising out of "[i]nfringement of copyright, title or slogan."[1] Id. ¶22. The notice conditions of the Policy require that RGP must, among other things: (1) notify Charter Oak "as soon as practicable of . . . an offense which may result in a claim"; (2) notify Charter Oak "as soon as practicable" if a claim is made or suit is brought; and (3) "immediately" send Charter Oak copies of any demands, notices, or legal papers received in connection with a claim or suit. Id. ¶23.

## LEGAL ARGUMENT

## I.
## APPLICABLE STANDARDS AND THE DUTY TO DEFEND

### A. Summary Judgment Standard.

Summary judgment is appropriate where no genuine issue exists as to any material fact relevant to the claim or defense contained in the motion, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The interpretation of an insurance policy is a matter of law and therefore, particularly amenable to summary judgment. Martinelli v. Travelers Ins. Cos., 687 A.2d 443, 445 (R.I. 1996).

### B. Rhode Island Rules of Insurance Contract Interpretation.[2]

Rhode Island law recognizes that insurance policies are contracts to which the ordinary rules of contract interpretation apply. Town of Cumberland v. R.I. Interlocal Risk Mgmt. Trust,

---

1 RGP has never claimed that the Underlying Complaint potentially alleges any of the other offenses contained in the Policy's definition of "advertising injury." See, e.g., RGP's Memorandum Of Law In Support Of Its Motion For Partial Summary Judgment ("RGP's Moving Brief") at 11.

2 Charter Oak and RGP agree that Rhode Island law should govern the interpretation of the Policy, see RGP's Moving Brief at 6, which was procured through a Rhode Island broker and delivered to the insured in Rhode Island. See Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991) ("Where . . . the parties . . . agree[] about what law governs, a federal court sitting in diversity is free, if it chooses, to . . . accept the parties' agreement.").

Inc., 860 A.2d 1210, 1215 (R.I. 2004). Courts must examine the policy "in its entirety, affording its terms their plain, ordinary and usual meaning." Id. (quoting Am. Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1192 (R.I. 2002)). If the language is clear, it governs. Id. If it is ambiguous—i.e., capable of more than one reasonable meaning—the policy will be construed in favor of the insured. Id. Courts, however, should "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." Mullane v. Holyoke Mut. Ins. Co., 658 A.2d 18, 20 (R.I. 1995); see also Textron, Inc. v. Aetna Cas. & Sur. Co., 638 A.2d 537, 539 (R.I. 1994) ("In [determining] whether an ambiguity exists, we view the insurance policy as a whole and in its entirety."). Terms and phrases must be read in context and should not be rendered superfluous. Gereboff v. Home Indem. Co., 383 A.2d 1024, 1026 (R.I. 1978).

To determine whether an insurer has a duty to defend, Rhode Island courts apply the "pleadings test." Peerless Ins. Co. v. Viegas, 667 A.2d 785, 787 (R.I. 1995). "[I]f the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy," the insurer must defend and, if not, the insurer has no duty to defend. Id. (citations and internal quotations omitted). In performing this analysis, courts must focus on the facts alleged, as opposed to the labels placed on the causes of action asserted in the complaint. See Employers Mut. Cas. Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 216 n.2 (D.R.I. 1998) ("a plaintiff cannot 'plead into' coverage by labeling the claim as something that is inconsistent with the factual allegations in the complaint").

## II.
## THE "ADVERTISING INJURY" PROVISIONS OF THE POLICY AFFORD NO COVERAGE FOR THE UNDERLYING ACTION.

To prevail on its claim that the "advertising injury" provisions of the Policy afford coverage for the Underlying Action, RGP must satisfy three requirements: first, RGP must establish that the Underlying Complaint alleges one of the offenses enumerated in the Policy's

definition of "advertising injury"; second, RGP must establish that the offense was allegedly committed by RGP in the course of advertising its goods, products or services; and, third, RGP must establish that there is a causal connection running from the offense through the advertising to the alleged injury. See Ekco Group, Inc. v. Travelers Indem. Co. of Ill, 273 F.3d 409, 412, 415 (1st Cir. 2001).

**A. The Underlying Complaint Does Not Potentially Allege "Advertising Injury."**

The Underlying Complaint does not potentially allege any of the offenses contained in the Policy's definition of "advertising injury." RGP contends that the Underlying Complaint alleges the offense of "infringement of . . . title." That claim is meritless.

As used in the definition of "advertising injury," the word "title" means "the non-copyrightable title of a book, film, or other literary or artistic work." Sholodge, Inc. v. Travelers Indem. Co. of Ill., 168 F.3d 256, 259 (6th Cir. 1999); see also, e.g., Callas Enters., Inc. v. Travelers Indem. Co. of Ill., 193 F.3d 952, 957 (8th Cir. 1999) (finding Sholodge's construction of "title" to be "natural, reasonable, and unforced"); Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc., 97 F. Supp. 2d 913, 923 (S.D. Ind. 2000) ("[T]he presence of the word 'title' in the context of 'copyright' and 'slogan' supports the conclusion that title refers unambiguously to the name of a book, film, or other literary or artistic work."); Atl. Mut. Ins. Co. v. Brotech Corp., 857 F. Supp. 423, 429 (E.D.Pa. 1994) ("[T]he term 'title' refers to a distinctive name or designation used to identify a literary or artistic work."), aff'd, 60 F.3d 813 (3d Cir. 1995) (Table). The Underlying Complaint has nothing to do with the title of any literary or artistic work. It alleges that RGP incorporated the Trademarked Seat Design into its Counterfeit Chairs. A seat design is not a "title."[3]

[3] While some courts have construed "title" slightly more broadly so as to also encompass a company's or product's name, see, e.g., Sunex Int'l, Inc. v. Travelers Indem. Co. of Ill., 185 F. Supp. 2d 614, (D.S.C. 2001), "[t]o include infringement of 'names' generally . . . would be to improperly expand the subject matter of the clause."

RGP's claim that the Underlying Complaint alleges "infringement of . . . title" is premised on the argument that "title" is ambiguous because it could also be reasonably construed to mean ownership of, or legal right to, any kind of property. That argument has been resoundingly rejected because, when the Policy is read as a whole and "title" is construed in context, it cannot reasonably be construed so broadly:

> [S]everal courts have recognized that title, when defined as a name of a work, logically compliments the definition of copyright in the phrase "infringement of copyright, title or slogan." Because a title of a work is similar to the type of information protected by copyright law, but for its brevity, it [is] a plain and natural reading of "infringement of copyright, title or slogan" to define title as a non-copyrightable title of a book, film, or other literary or artistic work.
>
> [Defined that way,] the words copyright, title and slogan all share the same inherent quality: they directly involve a form of expression, yet they retain distinct meanings. A copyright is a property right in an original work of authorship . . . fixed in any tangible medium of expression . . . . A slogan is a brief, striking phrase used in advertising or promotion. And title, defined as a name of a work, and not so broadly as a "right to something," melds naturally with copyright and slogan in implicating a form of expression, which yields some explanation for the presence of these terms in an advertising injury insurance policy.

Advanced Polymer, 97 F. Supp. 2d at 923-24 (citations omitted).

Further, "[i]f indeed 'title' referred to ownership in property, then the words 'copyright' and slogan' would be rendered superfluous," Zurich Ins. Co. v. Sunclipse, Inc., 85 F. Supp. 2d 842, 855 (N.D. Ill. 2000), aff'd, 241 F.3d 605 (7th Cir. 2001), because "[c]opyrights and slogans represent property rights that may also be infringed." Advanced Polymer, 97 F. Supp. 2d at 924. See also, e.g., Precision Automation, Inc. v. W. Am. Ins. Co., 203 F.3d 832 (Table), 1999 U.S. App. LEXIS 31378, at *8 (9th Cir. Oct. 8, 1999) (refusing to construe "title" broadly because it would render the words "copyright" and "slogan" superfluous).

---

Sholodge, 168 F.3d at 260. Regardless, this Court need not address that issue. Under either construction, the Underlying Complaint does not allege "infringement of . . . title." Just as the Underlying Complaint has nothing to do with the title of any artistic work, it has nothing to do with the name of any company or product.

The notion that "infringement of . . . title" encompasses all claims for trademark infringement defies common sense:

> [T]rademark infringement is a common and distinct category of actionable conduct. The only reasonable assumption is that if [the insurers] had intended to provide coverage for such liability, [they] would have referred to it by name in the policy. It is unreasonable to think that the insurers would have enumerated all of the other covered offenses, such as copyright, which are listed in the definition of "advertising injury," but chosen not to list the commonly recognized offense of trademark infringement, instead incorporating that offense under the language "infringement of copyright, title or slogan," which by its ordinary meaning does not include trademark infringement.

Sholodge, 168 F.3d at 260 (citations and quotations omitted and third alteration in original). See also St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys. Inc., 824 F. Supp. 583, 586 (E. D. Va. 1993) (finding under California law that "it is nonsense to suppose that if the parties had intended the insurance policy in question to cover patent infringement claims, the policy would explicitly cover infringements of 'copyright, title or slogan,' but then include patent infringement, sub silentio, in a different provision"); Textron, 638 A.2d at 539 ("[W]e view the insurance policy as a whole and in its entirety.").

Thus, throughout the country, federal and state courts have expressly rejected the argument that "title" as used in the "advertising injury" definition means the ownership of property. See, e.g., Sunex, 185 F. Supp. 2d at 621 (explaining such a construction "tortures" the meaning of the phrase "infringement of . . . title"); Brotech, 857 F. Supp. at 429 (rejecting argument that "title" refers to ownership); Auto Sox USA, Inc. v. Zurich N. Am., 88 P.3d 1008, 1011-12 (Wash. Ct. App. 2004) (same); ABB Flakt, Inc. v. Nat'l Union Fire Ins. Co., 1998 Del. Super. LEXIS, *24-25 (Del. Super. June 10, 1998) (same), aff'd on other grounds, 731 A.2d 811 (Del. 1999); Julian v. Liberty Mut. Ins. Co., 682 A.2d 611, 613-15 (Conn. App. Ct. 1996) (same). Indeed, in light of courts' uniform rejection of the argument, the Federal Circuit six years ago expressed bewilderment over the fact that the argument was still being raised. U.S. Test, Inc. v. N D E

Envt'l Corp., 196 F.3d 1376, 1381 (Fed. Cir. 1999) ("[I]n view of the uniform nature of the considerable body of federal and state precedent against it, we are surprised that [the insured] advances this argument before this court.").

Against this overwhelming body of case law stand only two cases where courts refused to construe "title" in context. The first is Sentex Sys., Inc. v. Hartford Accident & Indem. Co., 882 F. Supp. 930 (C.D. Cal. 1995), aff'd on other grounds, 93 F.3d 578 (9th Cir. 1996). In Sentex, the district court for the Central District of California, purporting to apply California law, construed "infringement of . . . title" to mean "infringement of . . . [any] property [right]." Id. at 944. Significantly, the Ninth Circuit resolved the appeal of the district court's decision on "somewhat narrower grounds than those relied upon by the district court" and, in doing so, expressly declined to reach the "infringement of . . . title" issue. 93 F.3d at 579, 581. Moreover, the construction of "title" in Sentex is in direct conflict with its sister court's conclusion in Owens-Brockway Glass Container, Inc. v. Int'l Ins. Co., 884 F. Supp. 363, 368 (E.D. Cal. 1995), aff'd, 94 F.3d 652 (Table), 1996 U.S. App. LEXIS 37525 (9th Cir. Aug. 7, 1996), that "title" "refers to a name, such as the name of a literary or artistic work, rather than to ownership of an invention or other thing." Additionally, the California Court of Appeal has rejected Sentex's construction of "title." See Maxconn, Inc. v. Truck Ins. Exch., 74 Cal. App. 4th 1267, 1276 (1999). Accordingly, courts have observed that Sentex's construction of "title" "does not appear to be good law . . . ." Sunclipse, 85 F. Supp. 2d at 855; see also Precision Automation, 1999 U.S. App. LEXIS 31378, at *8 (explaining that the Sentex district court's construction of "title" "does not appear to be good law in this Circuit").

The only other case to construe "title" so broadly is Merchants Co. v. Am. Motorists Ins. Co., 794 F. Supp. 611 (S.D. Miss. 1992). In Merchants, the court held that the alleged misappropriation of a customer list fell within the ambit of "infringement of copyright, title, or

slogan." Id. at 618. Like Sentex, Merchants has been disregarded by other courts. See Precision, 1999 WL 31378, at *8 ("The analysis behind the Merchants decision is . . . unpersuasive."); see also, e.g. Brotech, 857 F. Supp. at 429 (rejecting Merchant's construction of "title"); Owens-Brockway, 884 F. Supp. at 368, n.10 (same); Julian, 682 A.2d at 614 (same).

No reason exists to believe the Rhode Island Supreme Court would deviate from the virtually unbroken line of cases rejecting the argument that "title" may be construed to mean the ownership of property. While neither the First Circuit nor any Rhode Island state court has construed the term "title" in this context, the Second Circuit has concluded that the Rhode Island Supreme Court would follow Advanced Polymer, Julian, and the various other courts refusing to expand the term "title" to mean ownership. See Lumbermens Mut. Cas. Co. v. Dillon Co., 9 Fed. Appx. 81, 84, 2001 U.S. App. LEXIS 11003, at *2 (2d Cir. May 25, 2001).[4] This Court should do the same and hold that the Policy affords no coverage for the Underlying Action. See Julian, 682 A.2d at 615 ("We are not inclined to chart new pathways in the law with respect to an interpretation of a single word in an insurance policy . . . . It is preferable that such matters should be regarded as settled.").

**B. RGP Cannot Satisfy The "In The Course Of Advertising" Or "Causal Connection" Requirements.**

The Policy requires that "advertising injury" be "caused by an offense committed in the course of advertising your goods, products or services . . . ." RGP cannot satisfy this

[4] The only other opinion applying Rhode Island law where the "infringement of copyright, title or slogan" offense is mentioned is the magistrate's report and recommendation in Nortek, Inc. v. Liberty Mut. Ins. Co., 858 F. Supp. 1231 (D.R.I. 1994). There, the magistrate concluded, among other things, that allegations that the insured circulated advertising materials containing photographs of a competitor's product could "possibly" be read to allege various offenses included in the "advertising injury" definition at issue, including the offense of "infringement of copyright, title or slogan." The magistrate's report does not indicate whether the magistrate believed the allegations asserted infringement of copyright, infringement of title, infringement of slogan, or infringement of all three. Moreover, on this point, the magistrate's report contains no citations or analysis of any kind. To the extent Nortek could be read to conclude that the underlying complaint at issue alleged "infringement of . . . title," it is wholly unpersuasive and should be disregarded. Nortek is not binding on this Court and offers no reasonable basis to conclude that the Rhode Island Supreme Court would reject the overwhelming authority discussed herein.

requirement because none of the conduct for which it is alleged to be liable was committed by RGP in the course of advertising its goods, products or services. Moreover, no causal connection runs from any offense through advertising by RGP to Support Design's alleged injury.

Although no courts applying Rhode Island law have applied the "in the course of advertising" and "causal connection" requirements, the First Circuit found they were not satisfied in a case involving facts strikingly similar to those present here. In Ekco Group, Inc. v. Travelers Indem. Co. of Ill., 273 F.3d 409, 410-11 (1st Cir. 2001), the underlying complaint alleged the insured copied the design of the underlying plaintiff's tea kettle and stated claims for trade dress infringement, unfair competition, and infringement of the underlying plaintiff's design patent. After assuming without deciding that the underlying trade dress and patent infringement claims alleged the offense of "misappropriation of advertising ideas or style of doing business,"[5] the court held that the underlying complaint did not allege any offense was committed in the course of advertising the insured's goods, products or services.

The Ekco court first rejected the argument that mere allegations of trade dress infringement satisfied the "in the course of advertising" requirement. The court explained that a contrary conclusion would "require[] one to read at least some of the policy unnaturally":

> Yes, [the insured's] production and sale of the teapot could be described as "advertising . . ." in at least two different senses: in the technical sense that the teapot itself might . . . falsely suggest that [the underlying plaintiff] was the source, and in the banal sense that every product displayed or depicted is an advertisement for itself and its obvious features. But to describe this case of product copying as a case about [the insured's] advertising is surely a very strained way to speak.

Id. at 413.

[5] This offense is not contained in the subject Policy's definition of "advertising injury."

The insured in Ecko also argued that the "in the course of advertising" requirement was satisfied because it depicted its counterfeit teapot in a printed brochure and its annual report. The court rejected that argument too:

> [The insured] has shifted ground as to just what it regards as the "misappropriation" charged by [the underlying plaintiff] and ignored the policy requirement that the defined offense—here, allegedly misappropriation of advertising ideas or style of doing business—be "committed in the course of advertising [the insured's] goods . . ." Put differently, there must be some causal connection running from the offense through the advertising to the injury.
>
> Nothing in the [underlying] complaint suggests that it was concerned with [the insured's] design of its brochures or annual reports or that the graphics or typography were invented by or borrowed from [the insured.] The misappropriation offenses charged by the . . . [underlying] complaint were the physical reproduction and sale of a look-alike teapot by [the insured]. That physical reproduction and sale were not done "in the course of" making brochures or annual reports. The latter is advertising to be sure, but not where the offenses charged by [the underlying plaintiff] occurred.

Id. at 415.

Ekco is directly on point and leads to the conclusion that RGP cannot satisfy the "in the course of advertising" and "causal connection" requirements. As in Ekco, to describe this case of product copying as a case about the insured's advertising "is surely a very strained way to speak." Id. at 413. Accordingly, this Court should follow Ekco and hold that the "advertising injury" provisions of the Policy afford no coverage.

## III. THE POLICY EXCLUDES COVERAGE

Even if the Underlying Complaint was construed to allege "advertising injury" caused by a covered offense committed "in the course of advertising," several exclusions in the Policy are plainly applicable.

**A. The "Knowledge of Falsity" Exclusion Bars Coverage Because The Underlying Complaint Is Premised Without Exception Upon Knowing and Willful Misconduct.**

The Policy excludes coverage for "advertising injury" arising out of "oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." When an insured knowingly and intentionally engages in conduct that causes an "advertising injury," the "knowledge of falsity" exclusion bars coverage. See, e.g., Mulberry Square Prods. v. State Farm Fire & Cas., 101 F.3d 414, 422-423 (5th Cir. 1996) ("knowledge of falsity" exclusion barred coverage for counterclaim that alleged insured engaged in conduct with "knowledge and intent"); Atl. Mut. Ins. Co. v. Terk Techs. Corp., 763 N.Y.S.2d 56, 63 (N.Y. App. Div. 2003) ("knowledge of falsity" exclusion bars coverage for trademark infringement claims premised upon intentional and knowing conduct); A.J. Sheepskin and Leather Co. v. Colonia Ins. Co., 709 N.Y.S. 2d 82, 83 (N.Y. App. Div. 2000) (same).

Even if the Underlying Complaint alleged "advertising injury" caused by a covered offense committed "in the course of advertising," the "knowledge of falsity" exclusion bars coverage because the Underlying Complaint makes clear that any such advertising was necessarily published by RGP with full knowledge of its falsity. See, e.g., Material Facts ¶10 ("RGP has acted with full knowledge of Support Design's rights, with the intention to usurp such rights, and with the knowledge that such acts are causing confusion or are likely to cause confusion"); id. ("[the] acts of RGP are . . . intentional and willful"); id. (RGP had "knowledge of such false designation of origin or description" and "willfully promoted . . . the sale of its Counterfeit Chairs . . . in a manner so as to designate falsely Support Design as the origin."); id. ("RGP has utilized the Seat Design with full prior knowledge of the Seat Design trademark, and RGP's use of that mark was and is for the willful and calculated purpose of trading on the trademark's goodwill"). As set forth above, see, infra, at 2-3, the claims in the Underlying Complaint are expressly premised, without exception, on allegations that RGP knowingly and intentionally

committed the complained of acts. Based on the historical relationship between RGP and Support Design and the repeated, unequivocal allegations of intentional misconduct, it is impossible to read the Underlying Complaint to potentially allege that RGP infringed the Trademarked Seat Design by accident or that the copy-cat Counterfeit Chairs accidentally implied an affiliation between RGP and Support Design. See Employers Mut. Cas. Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 216 n.2 (D.R.I. 1998) (explaining that a claim in an underlying complaint should not be construed to allege "something that is inconsistent with the factual allegations in the complaint"). Because the Underlying Complaint cannot be construed to allege anything other than knowing and intentional trademark infringement, it is irrelevant that, in theory, a trademark infringement lawsuit premised on different facts could be based on negligent conduct. See Terk Techs., 763 N.Y.S.2d at 63 ("[N]otwithstanding the fact that a violation of the Lanham Act can be unintentional, and that the complaint in the federal action asserts that [the insured] acted with 'reckless disregard,' we can discern no justification from the factual allegations set forth in the complaint to impose a duty to defend.").[6]

In Callas Enters., Inc. v. Travelers Indem. Co. of Ill., 193 F.3d 952, 957 (8th Cir. 1999), the Eighth Circuit concluded that the underlying complaint left no room for doubt as to the applicability of the "knowledge of falsity" exclusion, even though it contained no specific allegation that the insured knowingly made false publication of material. The court observed:

> [E]ach of the nine claims . . . begins with . . . . : ["]Moreover, defendant engaged in deceptive trade practices[,] using "bait and switch" tactics in breaching its agreement with Sbemco[. D]efendant solicited Sbemco customers[,] showing the customers samples of Sbemco . . . matting and

[6] While the Underlying Complaint nowhere asserts that RGP's conduct was "reckless" or "negligent," it is important to note that, even if it did, this Court would be free to ignore that label because it would be inconsistent with the factual allegations regarding the nature of RGP's conduct. See Peerless Ins. Co. v. Viegas, 667 A.2d 785, 788-89 (R.I. 1995) ("The fact that the allegations in [the underlying] complaint are described in terms of "negligence" is of no consequence. A plaintiff, by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark."); see also, e.g., Dodge v. Legion Ins. Co., 102 F. Supp. 2d 144, 150 (S.D.N.Y. 2000) ("The analysis . . . 'depends on the facts which are pleaded, [and] not [on] the conclusory [legal] assertions.'") (quoting Allstate Ins. Co. v. Mugavero, 589 N.E.2d 365, 370 (N.Y. 1992) (alteration in original)).

> obtaining orders from these customers of Sbemco . . . matting, but actually selling the customers either non-Sbemco . . . matting or a different type of . . . matting. . . .["] It would defy logic to view this language as alleging anything other than that Callas acted falsely and with knowledge of that falsity.

Id. at 957 n.5. Similarly, here, it would "defy logic" to view the Underlying Complaint as claiming anything other than that RGP acted falsely and with knowledge of that falsity. Thus, even if the Underlying Complaint alleged otherwise covered "advertising injury," the "knowledge of falsity" exclusion bars coverage. See Callas, 193 F.3d at 957; Mulberry Square Prods., 101 F.3d at 422-23; A.J. Sheepskin, 709 N.Y.S. 2d at 82-83.

**B. The "Violation of a Penal Statute" Exclusion Bars Coverage Because The Underlying Complaint Is Premised Without Exception On Allegedly Willful Conduct That Violates 18 U.S.C. §2320.**

The Policy excludes coverage for "advertising injury" arising out of "the willful violation of a penal statute or ordinance committed by or with the consent of the insured." 18 U.S.C. §2320 is a penal statute that prohibits precisely what the Underlying Complaint alleges RGP did: "Whoever intentionally traffics or attempts to traffic in goods . . . and knowingly uses a counterfeit mark on or in connection with such goods . . . shall . . . be fined not more than $2,000,000 or imprisoned not more than 10 years, or both . . . ." As explained above, the course of conduct alleged in the Underlying Complaint cannot be construed as alleging anything other than knowing and intentional trademark infringement by RGP while intentionally trafficking in the Counterfeit Chairs. This constitutes a violation of 18 U.S.C. § 2320. Accordingly, even if the Underlying Complaint alleged otherwise covered "advertising injury," the "violation of a penal statute" exclusion bars coverage. See, e.g., Scalise v. Metro. Group Prop. & Cas. Ins. Co., 85 Fed. Appx. 256, 2004 U.S. App. LEXIS 504, *2-*3 (2d Cir. Jan. 14, 2004) ("violation of a penal statute" exclusion bars coverage where insured sued for sexual misconduct prohibited by statute); Carney v. Village of Darien, 60 F.3d 1273, 1281 (7th Cir. 1995) (exclusion bars coverage where complaint alleges conduct that violate penal statute).

**C. The "Breach of Contract" Exclusion Bars Coverage Because The Injuries Alleged In The Underlying Action Arose Out Of RGP's Breach Of The Distribution Agreement.**

The Policy excludes coverage for "advertising injury" arising out of "breach of contract." Again, the Eight Circuit's decision in Callas, 193 F.3d 952, is instructive. There, the insured had received the exclusive right to sell a manufacturer's floor matting, in exchange for a promise not to sell any competing brands. Id. at 954. After the insured allegedly breached the contract by selling other brands, the manufacturer brought various claims, including one for trademark infringement. Id. The court concluded that the "breach of contract" exclusion barred coverage:

> We find the Policy's language is clear, unambiguous, and broad in its scope. The Supreme Court of Minnesota has previously interpreted insurance policy language of this nature. In Associated Indep. Dealers, Inc. v. Mutual Service Ins. Co., 304 Minn. 179, 229 N.W.2d 516, 518 (1975) (citation omitted), that court concluded that this "arising out of" language meant "originating from," "having its origins in," "growing out of," or "flowing from." Given such a broad interpretation of this "arising out of" language, we cannot read any of the counts alleged in [the] underlying complaint which flow from or have their origins in anything other than [the insured's] alleged breach of the exclusive agency contract . . . .

Id. at 955-56. See also Pa. Pulp & Paper Co. v. Nationwide Mut. Ins. Co., 100 S.W.3d 566, 572-73 (2003 Tex. Ct. App.) (concluding alleged injury—misappropriation of trade secrets—arose out of the breach of a licensing agreement); Southstar Corp. v. St. Paul Surplus Lines Ins. Co., 42 S.W.3d 187, 191 (Tex. Ct. App. 2001) (concluding alleged injury—unauthorized use of company's name—resulted from breach of dissolution agreement).

The Rhode Island Supreme Court would follow Callas and conclude that the "breach of contract" exclusion bars coverage on the similar facts presented here. While the Supreme Court has not yet had the occasion to apply this exclusion, it has, like the Minnesota Supreme Court, construed the phrase "arising out of" in this context to "mean 'flowing from' or 'having its origin in,' thereby 'indicating that there only need be 'a' causal connection, rather than a proximate causal connection.'" Am. Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1194 (R.I. 2002)

(citations omitted). As in Callas, the claims in the Underlying Complaint "flow from," and "have their origins in," RGP's alleged breach of the Distribution Agreement in December 2001. If RGP had not breached, it would not have lost the right to use the Trademarked Seat Design and, therefore, of course, would not have been sued for trademark infringement. Thus, even if the Underlying Complaint alleged otherwise covered "advertising injury," the "breach of contract" exclusion bars coverage.

### D. The "Failure of Goods" Exclusion Bars Coverage Because The Underlying Complaint Alleges RGP Created A False Impression That The Counterfeit Chairs Were Affiliated With Support Design When, In Fact, They Were Not.

The Policy excludes coverage for "advertising injury" arising out of "the failure of goods, products or services to conform with advertised quality or performance." The "failure of goods" exclusion bars coverage where, as here, every claim in the Underlying Complaint is premised on allegations that the insured conveyed to the public a false impression that the goods, products or services it advertised were affiliated with another company when, in fact, they were not. See, e.g., Material Facts, ¶10 ("RGP has acted with full knowledge of Support Design's rights, with the intention to usurp such rights, and with the knowledge that such acts are causing confusion or likely to cause confusion in the relevant marketplace."); id. ("RGP has marketed and sold Counterfeit Chairs in such a manner so as inevitably to suggest an association, affiliation, or sponsorship with, or approval by, Support Design."). Thus, even if the Underlying Complaint alleged otherwise covered "advertising injury," the "failure of goods" exclusion bars coverage.

## IV.
## RGP CANNOT CLAIM COVERAGE UNDER THE POLICY BECAUSE IT BREACHED THE NOTICE CONDITIONS OF THE POLICY.

The notice conditions of the Policy provide that RGP must: (1) notify Charter Oak of an offense which may result in a claim "as soon as practicable"; (2) notify Charter Oak "as soon as possible" if a claim is made or suit is brought; and (3) "immediately" send Charter Oak copies of

any demands, notices, summonses, or legal papers received in connection with a claim or suit. RGP cannot recover under the Policy in connection with the Underlying Action because it breached these conditions. On this point, the Rhode Island Supreme Court's decision in Avco Corp. v. Aetna Cas. & Sur. Co., 679 A.2d 323 (R.I. 1996), is controlling.

In Avco, the insured manufacturer failed to notify its carriers of a claim until two and one-half years after the insured was aware of the claim. Id. at 328. The carriers' policies contained notice provisions virtually identical to those contained in the Policy. Id. 327-30. Because the insured produced no evidence justifying its delay in notifying its carriers, the trial court held that, as a matter of law, the insured's breach of the notice conditions of the carriers' policies prejudiced the carriers and barred coverage. Id. at 329. The insured argued that the trial court failed to require the carriers to prove they were prejudiced by the insured's late notice and, therefore, that the trial court's grant of summary judgment should be reversed pursuant to Pickering v. Am. Employers Ins., 282 A.2d 584 (R.I. 1971). The Supreme Court disagreed.

The Avco court first explained that the carriers were prejudiced as a matter of law because the late notice prevented the carriers from conducting any meaningful investigation into what were then two and one-half year-old claims. Id. at 329. More importantly, however, the court distinguished Pickering. First, the court pointed out that it had been quick to explain "just one year after Pickering was decided, that 'we never intended by our holding in Pickering to permit an insured, once he has purchased his policy, to file it away and forget it, and then defend his neglect . . . on the ground that the insurer was not prejudiced thereby.'" Id. at 329 (quoting Donahue v. Hartford Fire Ins. Co., 295 A.2d 693, 694 (1972)). Further, the court explained:

> [W]e assume that a corporation like [the insured] is presumed to have more sophistication in managing its affairs than the average consumer, and thus should be able to recognize and adhere to notice provisions in its contracts of insurance . . . . [T]he rationale of the notice-prejudice rule is undercut in factual situations such as here present, in which the insured is presumed to have more business acumen than the average consumer.

Id. at 330. See also O. Ahlborg & Sons, Inc. v. Travelers Indem. Co., 694 A.2d 750, 751 (R.I. 1997) (holding that insured's untimely notice barred recovery as a matter of law without analyzing whether insurer was prejudiced).

This Court should follow Avco and Ahlborg and hold as a matter of law that RGP is barred from recovering under the Policy because of its breach of the notice conditions. RGP (i) failed to notify Charter Oak "as soon as practicable" that Support Design had asserted a claim of trademark infringement, (ii) failed to notify Charter Oak "as soon as practicable" that Support Design filed the Underlying Action, and (iii) failed to "immediately" send the Underlying Complaint to Charter Oak. While RGP received cease and desist letters from Support Design in February and March 2002, and was served with the Underlying Complaint in March 2003, it waited until August 6, 2004 to notify and send the Underlying Complaint to Charter Oak. By that time, Charter Oak could not conduct any meaningful investigation into RGP's alleged breach of the Distribution Agreement more than two and one-half years earlier or the resulting allegations of trademark infringement and unfair competition. Thus, like the insurers in Avco and Ahlborg, Charter Oak was prejudiced by RGP's delay as a matter of law.

Additionally, like the insureds in Avco and Ahlborg, RGP cannot rely on Pickering to "defend [its] neglect" because it is a sophisticated corporation capable of "recogniz[ing] and adher[ing] to notice provisions in its contracts of insurance." Pickering, 282 A.2d at 329-30. Indeed, RGP engages in international business activities, both by itself and in concert with numerous large international corporations pursuant to complex contracts. See Material Facts, ¶2. The Rhode Island Supreme Court has made clear that no rational basis exists for this Court to even consider whether RGP prejudiced Charter Oak by failing to provide notice for more than two years. Ahlborg, 694 A.2d at 751; Avco, 679 A.2d at 330. Accordingly, this Court should hold that Charter Oak has no obligation to RGP in connection with the Underlying Action.

## V.
## THE KNOWN LOSS DOCTRINE BARS COVERAGE UNDER THE POLICY

"The known loss doctrine bars recovery when the insured has knowledge, before the inception of an insurance policy, that the insured has suffered the threat of an immediate economic loss, as a result of some event, and that the reality of that loss occurring is a certainty." Town of Cumberland, 860 A.2d 1210 at 1218. See also Bartholomew v. Appalachian Ins. Co., 655 F.2d 27, 29 (1st Cir. 1981) ("The concept of insurance is that the parties, in effect, wager against the occurrence or non-occurrence of a specified event; the carrier insures against a risk, not a certainty. Thus a homeowner could not insure his house against flood damage when the rising waters were already in his front yard."). RGP knew in February 2002, prior to the inception of the Policy in May 2002, that Support Design claimed that RGP was infringing Support Design's rights to the Trademarked Seat Design. See ¶12 of Material Facts. Therefore, the known loss doctrine bars coverage for the Underlying Action. See Direct Focus, Inc. v. Admiral Ins. Co., 81 Fed. Appx. 263, 2003 U.S. App. LEXIS 23628, *3-*4 (9th Cir. Nov. 7, 2003) (known loss doctrine barred coverage where insured received cease and desist letter prior to inception of policy).

## CONCLUSION

For the foregoing reasons, this Court should grant Charter Oak's Motion.

HIGGINS, CAVANAGH & COONEY LLP
Attorneys for Defendant

Dated: June 9, 2005

By: ______________________
James A. Ruggieri

Of Counsel:
William T. Corbett, Jr. (admitted *pro hac vice*)
Frederick P. Marczyk (admitted *pro hac vice*)
DRINKER BIDDLE &REATH LLP
500 Campus Drive
Florham Park, New Jersey 07932-1047

**CERTIFICATION**

I hereby certify that on this 9th day of June, a copy of the within was hand delivered to:

David P. Whitman, Esq.
Hanson Curran LLP
146 Westminister Street
Providence, RI 02903

______________________________