**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| RGP DENTAL, INC., Plaintiff, v. CHARTER OAK FIRE INSURANCE COMPANY, Defendant. | Civil Action No.: 04-CV-445 ML |

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF, RGP DENTAL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

Defendant Charter Oak Fire Insurance Company ("Charter Oak") respectfully submits this memorandum in opposition to plaintiff RGP Dental, Inc.'s ("RGP") Motion for Partial Summary Judgment. In this case, RGP seeks a declaration that Charter Oak is obligated to defend and indemnify RGP in connection with an underlying trademark infringement lawsuit filed against RGP by Support Design, AB ("Support Design") in the United States District Court for the Western District of North Carolina and styled Support Design AB v. RGP Dental, Inc., Case No. 3:02cv520-MU (the "Underlying Action"). RGP has moved for partial summary judgment on the issue of whether Charter Oak is obligated to defend RGP in the Underlying Action pursuant to the "advertising injury" provisions of an insurance policy issued by Charter Oak.

For several independently sufficient reasons, this Court should deny RGP's motion. First, no allegations in the Underlying Action potentially fall within the ambit of the "advertising injury" coverage grant. Even if they did, moreover, four separate exclusions bar coverage. In any event, RGP's failure to provide timely notice of Support Design's claims bars recovery

under the policy issued by Charter Oak. The "known loss" doctrine likewise bars coverage because RGP knew, prior to the inception of the policy issued by Charter Oak, that Support Design claimed RGP was infringing on Support Design's trademark rights.

## STATEMENT OF FACTS

### A. The Underlying Action.

RGP is a corporation that manufactures and sells dental chairs and engages in domestic and international business activities, often pursuant to complex contracts with other companies engaged in international business. See ¶2 of Charter Oak's Statement of Genuine Issues. In December 2002, RGP was served with the complaint filed by Support Design in the Underlying Action (the "Underlying Complaint"). Id. ¶3.

The Underlying Complaint contains counts for trademark infringement, unfair competition, and unfair trade practices. Id. ¶4. Those claims are premised on the following allegations: Until December 2001, RGP was authorized pursuant to a distribution agreement (the "Distribution Agreement") to sell dental chairs incorporating Support Design's trademarked dental chair design (the "Trademarked Seat Design"). Id. ¶5. As part of that agreement, RGP acknowledged Support Design's ownership rights in the Trademarked Seat Design. Id. ¶6. In December 2001, the Distribution Agreement was canceled because RGP breached its terms. Id. ¶7. Despite losing its legal right to use the Trademarked Seat Design, RGP "began manufacturing (or having manufactured on its behalf) and has continued to distribute and sell dental chairs incorporating an exact copy of the [T]rademarked Seat Design" (the "Counterfeit Chairs"). Id. ¶8. "At all relevant times," RGP was aware of Support Design's exclusive rights in the Trademarked Seat Design. Id. ¶9. "RGP has acted with full knowledge of Support Design's rights, with the intention to usurp such rights, and with the knowledge that such acts are causing confusion or are likely to cause confusion." Id. ¶10. RGP's acts "are . . . intentional and willful." Id. "RGP has

utilized the Seat Design with full prior knowledge of the Seat Design trademark, and RGP's use of that mark was and is for the willful and calculated purpose of trading on the trademark's goodwill." Id. See also id. (RGP had "knowledge of such false designation of origin or description" and "willfully promoted . . . the sale of its Counterfeit Chairs . . . in a manner so as to designate falsely Support Design as the origin."); id. ("RGP has marketed and sold Counterfeit Chairs in such a manner so as inevitably to suggest an association, affiliation, or sponsorship with, or approval by, Support Design."). "Support Design has objected to RGP's unauthorized manufacture, distribution and sale of its Counterfeit Chairs, but RGP has continued to do so despite these objections." Id. ¶11.

In the Prayer for Relief in the Underlying Complaint, Support Design seeks, among other things, an injunction barring RGP from engaging in various activities, including "advertising" goods that incorporate the Trademarked Seat Design. Id. ¶12. Although the Underlying Complaint repeatedly and descriptively alleges that RGP in the past engaged in other activities that the Prayer for Relief seeks to prevent in the future, it nowhere alleges RGP "advertised" the Counterfeit Chairs or engaged in any "advertising" at all. Id. ¶13.

**B. RGP's Tender of the Underlying Action to Charter Oak.**

RGP knew of Support Design's claims of trademark infringement at least as early as February 2002, when it received two letters from Support Design claiming infringement. Id. ¶14. Then, in March 2002, counsel for Support Design sent a letter to RGP threatening legal action if RGP did not stop using the Trademarked Seat Design. Id. ¶15. In December 2002, Support Design filed the Underlying Complaint. In March 2003, RGP was served with court papers filed by Support Design in Germany over RGP's use of the Trademarked Seat Design. Id. ¶16. In May 2003, RGP was served with new suit papers filed by Support Design in Germany. Id. ¶17. Throughout this time, RGP did not notify or provide the Underlying Complaint to Charter Oak.

Id. ¶18. Instead, RGP defended the Underlying Action and the German lawsuit itself. Id. ¶19. It was not until more than two years after learning of Support Design's claims, on August 6, 2004, that RGP first notified Charter Oak of Support Design's claims and demanded that Charter Oak defend RGP in the then year-and-a-half-old Underlying Action. Id. ¶20.

**C. The Charter Oak Policy.**

Charter Oak issued to named insured RGP Dental, Inc. Policy No. I-680-766Y0017-COF-02, in effect from May 1, 2002 to May 1, 2003 (the "Policy"). Id. ¶21. Pursuant to Coverage B, the Policy provides, in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "advertising injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "advertising injury" . . . to which this insurance does not apply. . . .

Id. ¶22. The Policy states that the insurance applies only to "'advertising injury' caused by an offense committed in the course of adverting your goods, products or services . . . ." Id. ¶23. The Policy excludes coverage for "advertising injury" arising out of: (1) "oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity"; (2) "the willful violation of a penal statute or ordinance committed by or with the consent of the insured; (3) "[b]reach of contract"; and (4) "[t]he failure of goods, products or services to conform with advertised quality or performance." Id.

The Policy defines "advertising injury," in relevant part, as injury, arising out of "[i]nfringement of copyright, title or slogan."[1] Id. ¶24. The notice conditions of the Policy require, among other things, that RGP must: (1) notify Charter Oak "as soon as practicable of . . . an offense which may result in a claim"; (2) notify Charter Oak "as soon as practicable" if a

claim is made or suit is brought; and (3) "immediately" send Charter Oak copies of any demands, notices, or legal papers received in connection with a claim or suit. Id. ¶25.

## LEGAL ARGUMENT

## I.
## APPLICABLE STANDARDS AND THE DUTY TO DEFEND

### A. Summary Judgment Standard.

Summary judgment is appropriate where no genuine issue exists as to any material fact relevant to the claim or defense contained in the motion, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The interpretation of an insurance policy is a matter of law and, therefore, particularly amenable to summary judgment. Martinelli v. Travelers Ins. Cos., 687 A.2d 443, 445 (R.I. 1996).

### B. Rhode Island Rules of Insurance Contract Interpretation.[2]

Rhode Island law recognizes that insurance policies are contracts to which the ordinary rules of contract interpretation apply. Town of Cumberland v. R.I. Interlocal Risk Mgmt. Trust, Inc., 860 A.2d 1210, 1215 (R.I. 2004). Courts must examine the policy "in its entirety, affording its terms their plain, ordinary and usual meaning." Id. (quoting Am. Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1192 (R.I. 2002)). If the language is clear, it governs. Id. If it is ambiguous—i.e., capable of more than one reasonable meaning—the policy will be construed in favor of the insured. Id. Courts, however, should "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." Mullane v. Holyoke Mut. Ins. Co., 658 A.2d 18, 20 (R.I. 1995); see also Textron, Inc. v. Aetna Cas. & Sur. Co., 638 A.2d

[1] RGP does not claim that the Underlying Complaint potentially alleges any of the other offenses contained in the Policy's definition of "advertising injury." See RGP's Memorandum Of Law In Support Of Its Motion For Partial Summary Judgment ("RGP's Moving Brief") at 11.

[2] Charter Oak and RGP agree that Rhode Island law should govern the interpretation of the Policy, which was procured through a Rhode Island broker and delivered to the insured in Rhode Island. See Borden v. Paul Revere

537, 539 (R.I. 1994) ("In [determining] whether an ambiguity exists, we view the insurance policy as a whole and in its entirety."). Terms and phrases must be read in context and should not be rendered superfluous. Gereboff v. Home Indem. Co., 383 A.2d 1024, 1026 (R.I. 1978).

To determine whether an insurer has a duty to defend, Rhode Island courts apply the "pleadings test." Peerless Ins. Co. v. Viegas, 667 A.2d 785, 787 (R.I. 1995). "[I]f the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy," the insurer must defend and, if not, the insurer has no duty to defend. Id., 667 A.2d at 787 (citations and internal quotations omitted). In performing this analysis, courts must focus on the facts alleged, as opposed to the labels placed on the causes of action asserted in the complaint. See Employers Mut. Cas. Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 216 n.2 (D.R.I. 1998) ("a plaintiff cannot 'plead into' coverage by labeling the claim as something that is inconsistent with the factual allegations in the complaint").

## II.
## THE "ADVERTISING INJURY" PROVISIONS OF THE POLICY AFFORD NO COVERAGE FOR THE UNDERLYING ACTION.

To prevail on its claim that the "advertising injury" provisions of the Policy afford coverage for the Underlying Action, RGP must satisfy three requirements: first, RGP must establish that the Underlying Complaint alleges one of the offenses enumerated in the Policy's definition of "advertising injury"; second, RGP must establish that the offense was allegedly committed by RGP in the course of advertising its goods, products or services; and, third, RGP must establish that there is a causal connection running from the offense through the advertising to the alleged injury. See Ekco Group, Inc. v. Travelers Indem. Co. of Ill., 273 F.3d 409, 412, 415 (1st Cir. 2001).

Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991) ("Where . . . the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to . . . accept the parties' agreement.").

**A. The Underlying Complaint Does Not Potentially Allege "Infringement of . . . title."**

Section II.A. of Charter Oak's Memorandum of Law in Support of its Motion for Summary Judgment ("Charter Oak's Moving Brief") discusses in detail why the Underlying Complaint cannot be construed to allege "infringement of . . . title" and, in doing so, explains that the word "title" is not ambiguous as used in the definition of "advertising injury" because "title" cannot be reasonably construed to mean ownership of, or legal right to, any kind of property. For the sake of brevity, we incorporate that discussion herein by reference.

It is telling that the only authority cited by RGP in support of its argument that "title" should be construed to mean any ownership interest in property is Sentex Sys., Inc. v. Hartford Accident & Indem. Co., 882 F. Supp. 930 (C.D. Cal. 1995), aff'd on other grounds, 93 F.3d 578 (9th Cir. 1996). The district court's decision in Sentex is not good law. Zurich Ins. Co. v. Sunclipse, Inc., 85 F. Supp. 2d 842, 855 (N.D. Ill. 2000), aff'd, 241 F.3d 605 (7th Cir. 2001); Precision Automation, Inc. v. W. Am. Ins. Co., 203 F.3d 832 (Table), 1999 U.S. App. LEXIS 31378, at *8 (9th Cir. Oct. 8, 1999). While RGP's citation to Sentex indicates the Ninth Circuit affirmed the district court's construction of "title," see RGP's Moving Brief, at 10, that is not so. The Ninth Circuit expressly resolved the appeal on "somewhat narrower grounds than those relied upon by the district court" and, in doing so, expressly declined to reach the "infringement of . . . title" issue. Sentex, 93 F.3d at 579, 581. Moreover, RGP ignores that the district court's construction of "title" in Sentex is in direct conflict with its sister court's conclusion in Owens-Brockway Glass Container, Inc. v. Int'l Ins. Co., 884 F. Supp. 363, 368 (E.D. Cal. 1995), aff'd, 94 F.3d 652 (Table), 1996 U.S. App. LEXIS 37525 (9th Cir. Aug. 7, 1996), that "title" "refers to a name, such as the name of a literary or artistic work, rather than to ownership of an invention or other thing." Significantly, the Owens-Brockway district court's construction of "title" was affirmed by the Ninth Circuit. Additionally, while Sentex purported to apply California law, the

California Court of Appeal has rejected Sentex's construction of "title." See Maxconn, Inc. v. Truck Ins. Exch., 74 Cal. App. 4th 1267, 1276 (1999).

Not just in California and the Ninth Circuit, but throughout the country, federal and state courts have expressly rejected RGP's argument that "title" means the ownership of property. See, e.g., Sunex Int'l, Inc. v. Travelers Indem. Co. of Ill., 185 F. Supp. 2d 614, 621 (D.S.C. 2001) (explaining that such a construction "tortures" the meaning of the phrase "infringement of . . . title"); Atl. Mut. Ins. Co. v. Brotech Corp., 857 F. Supp. 423, 429 (E.D.Pa. 1994) (rejecting argument that "title" refers to legal ownership), aff'd, 60 F.3d 813 (3d Cir. 1995) (Table); Auto Sox USA, Inc. v. Zurich N. Am., 88 P.3d 1008, 1011-12 (Wash. Ct. App. 2004) (same); ABB Flakt, Inc. v. Nat'l Union Fire Ins. Co., 1998 Del. Super. LEXIS, *24-25 (Del. Super. June 10, 1998) (same), aff'd on other grounds, 731 A.2d 811 (Del. 1999); Julian v. Liberty Mut. Ins. Co., 682 A.2d 611, 613-15 (Conn. App. Ct. 1996) (same). Various courts have implicitly done so. See, e.g., Sholodge, Inc. v. Travelers Indem. Co. of Ill., 168 F.3d 256, 259 (6th Cir. 1999) (construing "title" to mean "the non-copyrightable title of a book, film, or other literary or artistic work"); Callas Enters., Inc. v. Travelers Indem. Co. of Ill., 193 F.3d 952, 957 (8th Cir. 1999) (finding Sholodge's construction of "title" to be "natural, reasonable, and unforced"). Notably, the Second Circuit has concluded that the Rhode Island Supreme Court would follow Julian and the various other courts refusing to construe "title" to mean an ownership interest. See Lumbermens Mut. Cas. Co. v. Dillon Co., 9 Fed. Appx. 81, 84, 2001 U.S. App. LEXIS 11003, at *2 (2d Cir. May 25, 2001).

Several courts have rejected RGP's proposed construction of "title" as unreasonable because it ignores the context in which "title" is used and renders the words "copyright" and "slogan" superfluous. See, e.g., Precision Automation, 1999 U.S. App. LEXIS 31378, at *8 (refusing to construe "title" broadly because it would render the words "copyright" and "slogan"

superfluous); Zurich Ins. Co. v. Sunclipse, Inc., 85 F. Supp. 2d 842, 855 (N.D. Ill. 2000) ("If indeed 'title' referred to ownership in property, then the words 'copyright' and slogan' would be rendered superfluous."), aff'd, 241 F.3d 605 (7th Cir. 2001); Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc., 97 F. Supp. 2d 913, (S.D. Ind. 2000) ("[T]he presence of the word 'title' in the context of 'copyright' and 'slogan' supports the conclusion that title refers unambiguously to the name of a book, film, or other literary or artistic work."). RGP's Moving Brief offers no reason to believe the Rhode Island Supreme Court would reject the reasoning employed by these courts. See Textron, 638 A.2d at 539 ("In [determining] whether an ambiguity exists, we view the insurance policy as a whole and in its entirety."); Gereboff, 383 A.2d at 1026 (refusing to adopt construction that would rip words from their context or render them superfluous).

The only other cases cited by RGP in support of its argument that the Underlying Complaint alleges "infringement of . . . title" are Adolfo House Distrib. Corp. v. Travelers Prop. and Cas. Ins. Co., 165 F. Supp. 2d 1332 (S.D. Fla. 2001), Bay Electric Supply, Inc. v. Travelers Lloyds Ins. Co., 61 F. Supp. 2d 611 (S.D. Tex. 1999), and Poof Toy Prods., Inc. v. U.S. Fid. and Guar. Co., 891 F. Supp. 1228, 1232 (E.D. Mich. 1995). RGP cites these cases for the proposition that Support Design's claim for unfair competition is "essentially" a claim for trade dress infringement, but it is not clear why. Trade dress infringement is not an enumerated offense, and whether the claims in the Underlying Complaint are labeled "trademark infringement," "unfair competition," or "trade dress infringement" is irrelevant to whether such claims allege "infringement of . . . title." In any event, neither Adolfo House nor Bay Electric even addresses the "infringement of title" offense. The Poof Toy court reached the unremarkable conclusion that an underlying complaint arguably alleged "infringement of . . . title" where it expressly alleged the insured used the underlying plaintiff's "names and titles," including "Dino Fuzzles," "Greta Gecko," and "Tubasaurs." 891 F. Supp. at 1234. Here, of course, the Underlying Complaint does

not allege RGP used any of Support Design's names or titles and, therefore, cannot possibly be construed to allege "infringement of . . . title." This Court should deny RGP's Motion for Partial Summary Judgment.

**B. RGP Cannot Satisfy The "In The Course Of Advertising" Or "Causal Connection" Requirements.**

Section II.B. of Charter Oak's Moving Brief, which Charter Oak incorporates herein by reference, explains why this Court should follow the First Circuit's decision in Ekco Group, Inc. v. Travelers Indem. Co. of Ill, 273 F.3d 409, 412, 415 (1st Cir. 2001), and hold that RGP cannot satisfy the "in the course of advertising" and causal connection requirements. RGP cannot satisfy these requirements because none of the conduct complained of by Support Design was committed by RGP in its advertising. Indeed, the Underlying Complaint contains no allegations of "advertising" by RGP. To the contrary, while the Prayer for Relief in the Underlying Complaint seeks an injunction barring RGP in the future from engaging in various activities, including "advertising" goods that incorporate the Trademarked Seat Design, and while the Underlying Complaint repeatedly and descriptively alleges how RGP in the past engaged in other activities that the Prayer for Relief seeks to prevent in the future, it conspicuously does not allege that RGP ever engaged in "advertising" of any kind.

With respect to the "in the course of advertising" and causal connection requirements, RGP's Moving Brief does not address Ekco. Instead, RGP argues that: (i) allegations of trademark infringement necessarily satisfy the "in the course of advertising" and causal connection requirements because they involve allegations of consumer confusion; and (ii) the allegations of "marketing" and "promoting" in the Underlying Complaint are sufficient to satisfy these requirements. RGP's Moving Brief at 11-15. RGP's arguments directly conflict with the

holding and reasoning in Ekco. Moreover, those arguments are unpersuasive because they are premised on an unreasonable construction of the word "advertising."

**1. Allegations Of Trademark Infringement Do Not Inherently Satisfy The "In the Course Of Advertising" And "Causal Connection" Requirements.**

RGP's argument that allegations of trademark infringement necessarily satisfy the "in the course of advertising" and causal connection requirements is premised on its contention that "advertising" means "anything that calls the attention of the public to a product to increase the sales of the product." See RGP's Moving Brief at 12. While the Rhode Island Supreme Court has not addressed the construction of the word "advertising" for purposes of "advertising injury" coverage, the First Circuit in Ekco rejected both RGP's argument and the extraordinarily broad and unnatural construction of "advertising" on which it is premised.

In Ekco, the underlying complaint alleged the insured copied the design of the underlying plaintiff's tea kettle and stated claims for trade dress infringement, unfair competition, and infringement of the underlying plaintiff's design patent. 273 F.3d at 410-11. Like RGP, the insured in Ekco argued that "advertising" should be construed broadly to mean "calling public attention to" and that, therefore, trade dress infringement claims necessarily satisfy the "in the course of advertising" and causal connection requirements because they are premised on alleged public confusion caused by the infringement. The First Circuit rejected that argument because "it requires one to read at least some of the policy language unnaturally":

> Yes, [the insured's] production and sale of the teapot could be described as "advertising . . ." in at least two different senses: in the technical sense that the teapot itself might . . . falsely suggest that [the underlying plaintiff] was the source, and in the banal sense that every product displayed or depicted is an advertisement for itself and its obvious features. But to describe this case of product copying as a case about [the insured's] advertising is surely a very strained way to speak.

> Although the term "advertising" has a range of meanings, the one that leaps to mind in reading this policy is what is surely the most common use: as a reference to advertising in newspaper, radio, television or other familiar media where the advertisement is an activity distinct from the product being advertised.

Id. at 413. See also id. ("The obvious remedy is to read the term ['advertising'] to refer to conventional advertising—something separate from the product—which also happens to be the term's most familiar usage."); Sport Supply Group, Inc. v. Columbia Cas. Co., 335 F.3d 453, 464 (5th Cir. 2003) ("the term 'advertising' in an insurance policy is used in a conventional sense: to refer to a public announcement (such as on a billboard, in a newspaper, on a signpost, or in a television or radio commercial) that 'induce[s] the public to patronize a particular establishment or to buy a particular product'").

The court in Ekco further explained that the construction of "advertising" proposed by RGP would lead to "outlandish" and "absurd" results:

> Imagine that [the underlying plaintiff's] claim was not for trade dress but solely based on a design or utility patent, say, because [the insured] had copied [the underlying plaintiff's] electric tea kettle shaped like a furnace that boiled water in 15 seconds. Certainly, the [insured's] tea kettle itself could still be described as "advertising"—in the "calling public attention to" sense—its own evocative design or technical prowess; but, linguistic awkwardness aside, surely no one imagines that a policy covering "advertising injury" was intended to provide coverage for ordinary patent violations. See St. Paul Fire & Marine Ins. Co. v. Advanced Intercontinental Sys., Inc., 824 F. Supp. 583, 586 (E.D. Va. 1993), aff'd, 21 F.3d 424 (4th Cir. 1994).

Id. at 414. See also id. (observing that, if RGP's proposed construction of "advertising" was adopted, "it is hard to see how an insurer could even begin to calculate risks and set premiums").

Similarly, in Alpina USA Eyewear, L.L.C. v. Reliance Ins. Co., CA No. 96-55388, 1997 U.S. App. LEXIS 22912, at *7 (9th Cir. Aug. 27, 1997), the Ninth Circuit explained why RGP is wrong in arguing that claims for trademark infringement necessarily satisfy the "in the course of advertising" and causal connection requirements:

> [The insured's] argument essentially is that any time a complaint alleges consumer confusion, there inherently must have been advertising involved, at least by the appearance of the product itself. [The insured] argues that it must have communicated to the consumers, and that any communication to consumers is advertising. This line of reasoning presumes too broad a definition of "advertising" . . . . Here, [the underlying] complaint does not indicate that any advertising occurred, only that [the insured] copied [the underlying plaintiff's] products and that the copying caused consumer confusion. Consumers could have been confused even if [the insured] never advertised its [counterfeit] sunglasses at all, just from seeing them in the store or on the street. The complaint did not allege that [the underlying plaintiff] had been harmed by [the insured's] advertising activities, and thus the [underlying] action was beyond the scope of the policy's coverage.

Id. at *2-3.

The unreasonably broad construction of "advertising" that RGP would have this Court adopt ignores the fundamental purpose of trademarks and the plain distinction between that purpose and the ordinary meaning of "advertising." RGP concedes that "advertising" involves, at a minimum, an effort to enhance sales of a product. RGP's Moving Brief at 12. A trademark, by contrast, is "a label that serves primarily to identify and distinguish products." Sport Supply, 335 F.3d at 464. As the Fifth Circuit explained in Sport Supply:

> [U]nder Texas law (as under federal law), a mark is protected to the extent that it serves to distinguish a particular product, not to the extent that it entices consumers to purchase the product. If trademark law viewed "advertising" as a trademark's main function, a descriptive mark might receive more protection under trademark law than an arbitrary mark. . . . Yet a descriptive mark receives less protection under trademark law, because it does not serve to distinguish a product as well as an arbitrary mark.

Id. at 464 n.12 (citations omitted). 15 U.S.C.A. §1127 (defining "trademark" as something used "to identify and distinguish . . . goods").

Consistent with its recognition of the source-identifying function of a trademark, the court in Sport Supply, like the First Circuit in Ekco, expressly rejected the notion adopted by certain courts (and urged by RGP here) that allegations of trademark infringement necessarily satisfy the "in the course of advertising" and causal connection requirements:

> These courts appear to have adopted a very broad (and abstract) definition of "advertising." It is true that, from a theoretical standpoint, any trademark could serve as "advertising." Once consumers become familiar with a particular product or label, they may be induced to buy other products with the same label, not because they have seen the other products "advertised" in any conventional sense, but because the products carry the familiar label. . . .
>
> Thus, as a theoretical matter, any trademark could constitute "advertising." That does not mean, however, that any trademark constitutes "advertising" under the terms of this insurance policy. We must remember that our mission, in interpreting this insurance policy, is not to consider all possible definitions of the policy terms. Instead, . . . we must apply the law of the forum state. Thus, our task is to examine whether, under Texas law, this trademark constitutes "advertising."
>
> Under Texas law, it appears that the term "advertising" in an insurance policy is used in a conventional sense: to refer to a public announcement (such as on a billboard, in a newspaper, on a signpost, or in a television or radio commercial) that "induce[s] the public to patronize" a particular establishment or to buy a particular product. In other words, the term "advertising" refers to a common device for soliciting business.

Sport Supply, 335 F.3d at 464-65 (citations omitted) (footnote omitted). See also Advance Watch Co. v. Kemper Nat'l Ins. Co., 99 F.3d 795, 806-07 (6th Cir. 1996) (rejecting argument that allegations of trademark infringement satisfy "in the course of advertising" and causal connection requirements); Am. Nat'l Fire Ins. Co. v. Methods Research Corp., 2000 U.S. Dist. LEXIS 17748, at *12 (N.D. Ill. Dec. 5, 2000) (same); Diversified Invs. Corp. v. Regent Ins. Co., 596 N.W.2d 502, 1999 Wisc. App. LEXIS 399, *15 (Wis. Ct. App. April 8, 1999) (unpublished opinion) (same).[3]

Thus, for good reason, the First Circuit and various other courts have rejected the reasoning and overly broad construction of "advertising" adopted in the cases relied on by RGP in support

---

[3] RGP cites State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d 249 (4th Cir. 2003), Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742 (3d Cir. 1999), and Adolfo House Distrib. Corp. v. Travelers Prop. and Cas. Ins. Co., 165 F. Supp. 2d 1332 (S.D. Fla. 2001), for the proposition that a trademark has the potential to be an advertising idea. See RGP's Moving Brief at 13. Those cases mistakenly equate the source identifying purpose of trademarks with "advertising." As the well-reasoned opinions in Ekco and Support Supply make clear, however, the two are not the same. See also Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) (explaining that purpose of trademark is to identify the source of a product).

of its argument that allegations of trademark infringement necessarily satisfy the "in the course of advertising" and causal connection requirements. Indeed, Ekco makes clear that "advertising injury coverage" was never intended to assist the insured in counterfeiting its competitors' products by paying for the consequences when the insured gets caught. This Court, too, should follow Ekco and hold that RGP cannot satisfy the "in the course of advertising" and casual connection requirements.

### 2. Mere Allegations Of "Marketing" And "Promoting" Do Not Satisfy The "In The Course Of Advertising" And Causal Connection Requirements.

The Underlying Complaint does not allege that RGP infringed Support Design's trademark in any of its "advertisements" or "advertising." Nevertheless, RGP claims that the "in the course of advertising" and causal connection requirements are satisfied because the Underlying Complaint alleges RGP "marketed" and "promoted" the Counterfeit Chairs and specifically refers to a trade show attended by RGP "for the purpose of marketing and selling" the Counterfeit Chairs. See RGP's Moving Brief at 14.

As a preliminary matter, marketing and promoting are not the same thing as "advertising." See, e.g., Ekco, 273 F.3d at 413 ("advertising" refers to "advertising in newspaper, radio, television or other familiar media where the advertisement is an activity distinct from the product being advertised"); W. States Ins. Co. v. Wisconsin Wholesale Tire, Inc., 184 F.3d 699, 702 (7th Cir. 1999) (refusing to construe allegations of marketing as allegations of "advertising"); Henges Mfg., LLC v. Amerisure Ins. Co., 5 S.W.3d 544, 546 (Mo. Ct. App. 1999) ("advertising and marketing are not the same activity"). Indeed, the Underlying Complaint recognizes so much in distinctive use of the three terms. Moreover, nothing in the Underlying Complaint suggests RGP advertised "in newspaper, radio, television or other familiar media where the advertisement [wa]s an activity distinct from the product being advertised." Ekco, 273 F.3d at 413. The only

alleged "marketing" or "promoting" done by RGP was its trip to the trade show. In Wisconsin Wholesale, 184 F.3d at 702, the Seventh Circuit rejected an attempt to characterize similar allegations as "advertising":

> [The insured] wants us to treat "advertising" as equivalent to "marketing." Then the work of a salesman calling up customers is "advertising," an unnatural use of that word, and any effort to sell that involves one of the four listed "offenses" is covered. But why is this a sensible reading of the policy? Wisconsin reads ambiguities favorably to the insured, but it does not torture ordinary words until they confess of ambiguity. Deconstruction is not part of Wisconsin's approach to insurance contracts.

Nothing in Rhode Island law warrants ignoring the natural distinction between allegations of "promoting" and "marketing" and allegations of "advertising," see Mullane, 658 A.2d at 20 (courts should "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present"), especially where, as here, the only factual allegations supporting the labels "marketing" and "promoting" pertain to the insured's attendance at a trade show. See PIC Contractors, 24 F. Supp. 2d at 216 n.2 (courts must focus on the facts alleged, as opposed to the labels used in the underlying complaint). Attending a trade show can perhaps be considered "promoting" or "marketing," but surely not, in the natural and ordinary sense, "advertising." See Town of Cumberland, 860 A.2d at 1215 (courts must examine policy "in its entirety, affording its terms their plain, ordinary and usual meaning").

In any event, the issue raised by RGP—whether allegations that RGP "marketed" and "promoted" the Counterfeit Chairs are the same as allegations that it "advertised" them—is a red herring, as it is founded on the false premise that allegations that RGP "advertised" the Counterfeit Chairs would satisfy the "in the course of advertising" and causal connection requirements. The only type of advertising by RGP that could theoretically be alleged to have infringed the Trademarked Seat Design would be advertising that depicted the Counterfeit Chair. Even if one assumes that RGP published advertisements depicting the Counterfeit Chair, Ekco

makes clear that RGP cannot satisfy the "in the course of advertising" and causal connection requirements. The insured in Ecko argued that the "in the course of advertising" requirement was satisfied because it depicted its counterfeit teapot in a printed brochure and its annual report, but the court rejected that argument:

> [The insured] has shifted ground as to just what it regards as the "misappropriation" charged by [the underlying plaintiff] and ignored the policy requirement that the defined offense . . . be "committed in the course of advertising [the insured's] goods . . ." Put differently, there must be some causal connection running from the offense through the advertising to the injury.
>
> Nothing in the [underlying] complaint suggests that it was concerned with [the insured's] design of its brochures or annual reports or that the graphics or typography were invented by or borrowed from [the insured.] The misappropriation offenses charged by the . . . [underlying] complaint were the physical reproduction and sale of a look-alike teapot by [the insured]. That physical reproduction and sale were not done "in the course of" making brochures or annual reports. The latter is advertising to be sure, but not where the offenses charged by [the underlying plaintiff] occurred.

Id. at 415. Ekco establishes that, in cases like this—where the insured is alleged to have committed trade dress or trademark infringement by copying the design of a competitor's product—allegations that the insured depicted the counterfeit product in advertisements do not satisfy the "in the course of advertising" and causal connection requirements. See also Simply Fresh Fruit, Inc. v. Cont'l Ins. Co., 94 F.3d 1219, 1223 (9th Cir. 1996) ("explaining that advertising must cause the injury - not merely expose it"); Advance Watch, 99 F.3d at 806-07 (allegations in underlying trademark infringement action that insured depicted copied product in advertisements did not satisfy the "in the course of advertising" and causal connection requirements); Diversified, 1999 Wisc. App. LEXIS 399, at *15 ("Advertising an infringing product is not enough to establish the insurer's liability under an advertising injury clause.").

RGP cites Am. Employers Ins. Co. v. Delorme Publ'g Co., 39 F. Supp. 2d 64 (D. Maine 1999), which was decided prior to the First Circuit's decision in Ekco, and Poof Toy Prods. v.

U.S. Fid. & Guar. Co., 891 F. Supp. 1228 (E.D. Mich. 1995), which was decided before the Sixth Circuit's decision in Advance Watch, for the proposition that, "where a claim alleges that the marketing of a knock-off product results in harm, it would be artificial to deny coverage by constructing a distinction between injuries arising from marketing of infringed goods and injuries arising from the display or advertising of the goods." RGP's Moving Brief at 14 (quoting Delorme, 39 F. Supp. 2d at 75). That proposition ignores the plain distinction discussed above between allegations of "marketing" and allegations of "advertising." Moreover, the analysis by the district courts in Delorme and Poof Toy of the "in the course of advertising" and causal connection requirements has been rejected by their respective Courts of Appeal, which have since held that even allegations that the insured depicted knock-off products in advertisements are insufficient to satisfy the "in the course of advertising" and causal connection requirements. See Ekco, 273 F.3d at 415 (rejecting argument that allegations in underlying trademark infringement action that the insured depicted copied product in advertisements satisfied the "in the course of advertising" and causal connection requirements); Advance Watch, 99 F.3d at 806-07 (same). DeLorme and Poof Toy are unpersuasive.

A contrary rule—i.e., that allegations of advertising depicting an infringing product satisfy the "in the course of advertising" and causal connection requirements—would lead to absurd results:

> [A] rule that mere advertisement of an infringing product would create a duty to defend contains a fundamental flaw in that it reads the requirement that the infringement occur in the course of advertising out of the policy. Taken to its extreme, this argument would lead to the conclusion that any harmful act, if it were advertised in some way, would fall under the grant of coverage merely because it was advertised.

Farmington Cas. Co. v. Cyberlogic Techs., Inc., 996 F. Supp. 695, 702 (E.D. Mich. 1998) (citations omitted). See also Ekco, 273 F.3d at 410. Such results are precisely what the causal

connection requirement is intended to avoid. See, e.g., Advance Watch, 99 F.3d at 806-07 (explaining that, without the causal connection requirement advertising injury coverage would apply whenever an advertised product or service is alleged to have caused harm, rendering the coverage applicable with respect to most claims against an insured business); Bank of the West v. Superior Court, 833 P.2d 545, 558-61 (Cal. 1992) (same).

Even if Support Design had alleged that RGP depicted the Counterfeit Chairs in advertisements (which it did not), RGP still could not satisfy the "in the course of advertising" and causal connection requirements. As in Ekco, to describe this case of product copying as a case about the insured's advertising "is surely a very strained way to speak." See Ekco, 273 F.3d at 415. This Court should follow Ekco and hold that RGP has failed to satisfy the "in the course of advertising" and causal connection requirements.

## III. THE POLICY EXCLUDES COVERAGE

The Policy excludes coverage for "advertising injury" arising out of (1) "oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity"; (2) "the willful violation of a penal statute or ordinance committed by or with the consent of the insured"; (3) "breach of contract"; and (4) "the failure of goods, products or services to conform with advertised quality or performance." Section III of Charter Oak's Moving Brief, which is incorporated herein by reference, explains why, even if the Underlying Complaint alleged "advertising injury" caused by a covered offense committed "in the course of advertising," each of these exclusions is independently sufficient to bar coverage for the Underlying Action. Accordingly, this Court should deny RGP's motion.

## IV.
## RGP CANNOT CLAIM COVERAGE UNDER THE POLICY BECAUSE IT BREACHED THE NOTICE CONDITIONS

The notice conditions of the Policy provide that RGP must: (1) notify Charter Oak of an offense which may result in a claim "as soon as practicable"; (2) notify Charter Oak "as soon as possible" if a claim is made or suit is brought; and (3) "immediately" send Charter Oak copies of any demands, notices, summonses, or legal papers received in connection with a claim or suit. Section IV of Charter Oak's Moving Brief explains that RGP is barred from recovering under the Policy because it breached the Policy's notice conditions. Charter Oak incorporates herein by reference Section IV of Charter Oak's Moving Brief. For the reasons set forth therein, this Court should deny Charter Oak's Motion for Partial Summary Judgment.

## V.
## THE KNOWN LOSS DOCTRINE BARS COVERAGE UNDER THE POLICY

Section V. of Charter Oak's Moving Brief, which Charter Oak incorporates herein by reference, explains that the known loss doctrine bars coverage for the Underlying Action because RGP knew in February 2002, prior to the inception of the Policy in May 2002, that Support Design claimed that RGP was infringing Support Design's rights to the Trademarked Seat Design. Accordingly, Charter Oak has no duty to defend RGP in connection with the Underlying Action

## CONCLUSION

For the foregoing reasons, this Court should deny RGP's motion.

Defendant,
By Its Attorneys,

HIGGINS, CAVANAGH & COONEY LLP

Dated: July 1, 2005

By: ______________________
James A. Ruggieri #2828
123 Dyer Street
Providence, RI 02903
(401) 272-3500 (Tel.)
(401) 273-8780 (Fax)

Of Counsel:

William T. Corbett, Jr. (admitted *pro hac vice*)
Frederick P. Marczyk (admitted *pro hac vice*)
DRINKER BIDDLE &REATH LLP
500 Campus Drive
Florham Park, New Jersey 07932-1047

**CERTIFICATION**

I hereby certify that a copy of the within was hand-delivered to David P. Whitman, Esq., Hanson Curran LLP, 146 Westminister Street, Providence, RI 02903, on this 1st day of July, 2005.

______________________