**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| RGP DENTAL, INC., | |
| Plaintiff, | Civil Action No.: 04-CV-445 ML |
| v. | |
| CHARTER OAK FIRE INSURANCE COMPANY, | |
| Defendant. | |

DEFENDANT CHARTER OAK FIRE INSURANCE COMPANY'S
MEMORANDUM OF LAW IN REPLY TO
PLAINTIFF RGP DENTAL, INC.'S OBJECTION TO
CHARTER OAK'S MOTION FOR SUMMARY JUDGMENT

James A. Ruggieri, Esq.
HIGGINS, CAVANAGH & COONEY, LLP
The Hay Building
123 Dyer Street
Providence, R.I. 02903-3987
Phone: (401) 272-3500
Facsimile: (401) 273-8780
Attorneys for Defendant
Charter Oak Fire Insurance Company

OF COUNSEL:
William T. Corbett, Jr.
Frederick P. Marczyk
DRINKER BIDDLE & REATH LLP
A Pennsylvania Limited Liability Partnership
500 Campus Drive
Florham Park, New Jersey 07932
Phone: (973) 360-1100
Facsimile: (973) 360-9831

## TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

I. THE POLICY'S "ADVERTISING INJURY" PROVISIONS CANNOT REASONABLY BE CONSTRUED TO AFFORD COVERAGE FOR THE UNDERLYING ACTION ..... 1

- A. "Title" In The Phrase "Infringement Of Copyright, Title, Or Slogan" Cannot Reasonably Be Construed To Mean "The Legal Right To Property." ..... 1
- B. RGP'S Proposed Construction Of "Advertising" Is Unreasonable. ..... 5

II. THE POLICY EXCLUDES COVERAGE ..... 6

- A. The "Knowledge of Falsity" Exclusion Applies. ..... 6
- B. The "Violation of a Penal Statute" Exclusion Applies. ..... 9
- C. The "Breach of Contract" Exclusion Applies. ..... 10
- D. The "Failure of Goods" Exclusion Applies ..... 10

III. RGP'S BREACH OF THE POLICY'S NOTICE CONDITIONS BARS COVERAGE ..... 11

IV. THE KNOWN LOSS DOCTRINE BARS COVERAGE ..... 14

V. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

Allstate Ins. Co. v. Russo, 641 A.2d 1304, 1307 (R.I. 1994) ........................................................ 2

Am. Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1194 (R.I. 2002) ........................................... 10

Amica Mut. Ins. Co. v. Streicker, 583 A.2d 550, 552 (R.I. 1990) ................................................. 3

Atl. Mut. Ins. Co. v. Terk Techs. Corp, 763 N.Y.S.2d 56, 63-64 .................................................. 8

Avco Corp. v. Aetna Cas. & Sur. Co., 679 A.2d 323, 328-3299 (R.I. 1996) .................. 11, 12, 13

Bay Electric Supply v. Travelers Lloyds Ins. Co., 61 F. Supp.
2d 611, 620 (S.D. Tex. 1999 ................................................................................... 14, 15

Charter Oak's Memorandum In Support
Of Its Motion For Summary Judgment ("Moving Brief")
at 6-10 , 15, 18-19 .......................................................................... 1, 2, 3, 4, 10, 12

Charter Oak's Statement Of Undisputed Material Facts, ¶ 10 and 12 ............................... 7, 9, 15

Clauson v. New Eng. Ins. Co., 83 F. Supp. 2d 278, 281 (D.R.I. 2000) ......................................... 2

CNA Fin. Corp. v. Alfano, 711 A.2d 1142, 1144 (R.I. 1998) ...................................................... 3

Direct Focus, Inc. v. Admiral Ins. Co., 81 Fed. Appx. 263,
2003 U.S. App. LEXIS 23628, *3-*4 (9th Cir. Nov. 7, 2003) ..................................................... 15

Ekco Group, Inc. v. Travelers Indem. Co. of Ill.,
273 F.3d 409, 410-13, 415 (1st Cir. 2001) ................................................................. 5, 6

Employers Mut. Cas. Co. v. PIC Contractors, Inc.,
24 F. Supp. 2d 212, 216 n.2 (D.R.I. 1998) .................................................................... 8

Gereboff v. Home Indem. Co., 383 A.2d 1024, 1026 (R.I. 1978) ..................................................2

Flori v. Allstate Ins. Co., 120 R.I. 511, 513 (R.I. 1978);
2001 U.S. Dist. LEXIS 2204, at *40 (N.D. Ill. March 1, 2001) ............................................ 9, 11

Flodine v. State Farm Ins. Co., No. 99 C7466,
2001 U.S. Dist. LEXIS 2204 (N.D. Ill. March 1, 2004)................................................ 10, 11

Hansen v. Stocking, 388 A.2d 19, 21 (R.I. 1978) ............................................................... 2

Hyman v. Nationwide Fire Ins. Co., 304 F.3d 1179, 1195-1196 (11th Cir. 2002)................. 6, 7, 8

In re Newport Plaza Assoc., L.P., 985 F.2d 640, 646 (1st Cir. 1993) .......................................... 2

Insua v. Scottsdale Ins. Co., 104 Cal. App. 4th 737, 742-43 (2004) .......... 13

Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.,
208 F. Supp. 2d 687, 691 (S.D. Tex. 2001) .......... 15

New Era of Networks, Inc. v. Great N. Ins. Co.,
2003 U.S. Dist. LEXIS 14259, *23 (S.D. Tex. Aug. 4, 2003) .......... 14

Psaty & Fuhrman, Inc. v. Housing Auth., 76 R.I. 87, 93 (R.I. 1949) .......... 2

Peerless Ins. Co. v. Viegas, 667 A.2d 785, 788-89 (R.I. 1995) .......... 8

PIC Contractors, 24 F. Supp. 2d at 216 n.2 .......... 9, 10

RGP's Memorandum of Law in Reply to Charter Oak's
Motion for Summary Judgment and Objection to RGP's
Motion for Summary Judgment ("Opposition")
at 12, 15-17, 18 n.8, 20 .......... 1, 7, 13, 14, 15

Sholodge, Inc. v. Travelers Indem. Co. of Ill., 168 F.3d 256, 259 (6th Cir. 1999) .......... 1

Summit Packaging Sys. v. Kenyon & Kenyon, 273 F.3d 9, 12 (1st Cir. 2001) .......... 2

State Auto Prop. and Cas. Ins. Co. of Am. v. Travelers Indem. Co. of Am.,
343 F.3d 249, 260 (4th Cir. 2004) .......... 6, 7

St. Paul Fire & Marine Ins. Co. v. Lefton Iron & Metal Co.,
694 N.E.2d 1049, 1055 (Ill. App. Ct. 1998) .......... 15

Textron, Inc. v. Aetna Cas. and Surety Co., 638 A.2d 537, 541 (R.I. 1994) .......... 1

Textron, Inc. v. Aetna Cas. And Surety Co., 754 A.2d 742, 749 (R.I. 2000) .......... 3, 4

Truck Ins. Exchange v. Unigard Ins. Co., 79 Cal. App. 4th
966, 976 (Cal. Ct. App. 2000) .......... 13

Verizon Connected Solutions, Inc. v. Starlight Communications Holding Inc. I,
2004 U.S. Dist. LEXIS 15839, at *19 (D.R.I. 2004) .......... 2

Viegas, 667 A.2d at 788-89 .......... 9, 10

Zanfagna v. Providence Washington Ins. Co., 415 A.2d 749, 1049, 1051 (R.I. 1980) .......... 4

**FEDERAL STATUTES**

18 U.S.C. § 2320 .......... 9, 10

**LANHAM ACT** .......... 8

## INTRODUCTION

Defendant Charter Oak Fire Insurance Company ("Charter Oak") respectfully submits this Memorandum Of Law In Reply To Plaintiff RGP Dental, Inc.'s ("RGP") Objection To Charter Oak's's Motion For Summary Judgment ("Opposition").

## I.
## THE POLICY'S "ADVERTISING INJURY" PROVISIONS CANNOT REASONABLY BE CONSTRUED TO AFFORD COVERAGE FOR THE UNDERLYING ACTION

### A. "Title" In The Phrase "Infringement Of Copyright, Title, Or Slogan" Cannot Reasonably Be Construed To Mean "The Legal Right To Property."

The word "title" in the context of the phrase "infringement of copyright, title or slogan" cannot reasonably be construed to mean anything other than the "title of a book, film, or other literary or artistic work." Sholodge, Inc. v. Travelers Indem. Co. of Ill., 168 F.3d 256, 259 (6th Cir. 1999). See also Charter Oak's Memorandum In Support Of Its Motion For Summary Judgment ("Moving Brief") at 6-10. Rejecting Charter Oak's common sense construction of "title," RGP instead lifts "title" from its context, analyzes it in isolation, and declares that the phrase "infringement of copyright, title and slogan" is ambiguous because, in other contexts, the word "title" can mean "the legal right to control property." RGP's argument fails because its proffered alternative construction of "title" is patently unreasonable and contrary to core principles of insurance contract interpretation under Rhode Island law.

RGP goes to great lengths to establish that the word "title," like most words, can carry different meanings depending on the context in which it is used. However, "[b]ecause ambiguity lurks in every word, sentence, and paragraph . . . the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, common sense manner." Textron, Inc. v. Aetna Cas. and Surety Co., 638 A.2d 537, 541 (R.I. 1994) (citations omitted). Here, while courts have long warned against methods of contract interpretation that rely

myopically on dictionaries, see, e.g., Hansen v. Stocking, 388 A.2d 19, 21 (R.I. 1978) ("courts should be wary of '[making] a fortress out of the dictionary'") (citations omitted), RGP emphasizes that the dictionary contains multiple definitions of "title."[1] That "title" can mean different things in different contexts, however, is beside the point. As the Rhode Island Supreme Court explained:

> The meaning of [terms in an insurance policy] cannot be determined in isolation or out of context. Rather, [they] must be defined contextually. This principle, known as noscitur a sociis (literally, from the Latin, "it is known by its associates"), provides that the meaning of a word in a written instrument must be determined by reference to the terms accompanying the word and, more specifically, that general and specific words are associated with and take color from each other.

Allstate Ins. Co. v. Russo, 641 A.2d 1304, 1307 (R.I. 1994) (citations and quotations omitted). See also In re Newport Plaza Assoc., L.P., 985 F.2d 640, 646 (1st Cir. 1993) (explaining that, under Rhode Island law, "a court is duty bound to construe contractual terms in . . . context").

In arguing that "title" could mean "the legal right to property," RGP ignores the context in which "title" is used in the Policy. Moreover, RGP's proffered construction of "title" ignores another related axiom of contract interpretation: Constructions that render terms meaningless must be avoided.[2] RGP's proposed construction of "title" renders the words "copyright" and "slogan" meaningless surplusage. See Moving Brief, at 7.

---

[1] RGP contends the cases cited by Charter Oak "reject[] the proposition that 'title,' as used in the policy phrase 'infringement of . . . title,' can mean what dictionaries say it can mean—the legal right to control property or a claim." Opposition, at 1-2. Whatever dictionaries may say about what "title" can mean in other contexts, no dictionary claims that "title" as used in "infringement of copyright, title or slogan" means "the legal right to control property."

[2] See, e.g., Summit Packaging Sys. v. Kenyon & Kenyon, 273 F.3d 9, 12 (1st Cir. 2001) ("constructions that render contract terms meaningless should be avoided"); Verizon Connected Solutions, Inc. v. Starlight Communications Holding Inc. I, CA 02-201ML, 2004 U.S. Dist. LEXIS 15839, at *19 (D.R.I. Jan. 6, 2004) (same); Clauson v. New Eng. Ins. Co., 83 F. Supp. 2d 278, 281 (D.R.I. 2000) ("the policy should be construed in a manner that . . . avoids rendering any of its provisions meaningless"); Gereboff v. Home Indem. Co., 383 A.2d 1024, 1026 (R.I. 1978) (construing contract terms "in context and not as mere surplusage"); Psaty & Fuhrman, Inc. v. Hous. Auth., 76 R.I. 87, 93 (R.I. 1949) ("such a clause . . . cannot be treated as meaningless").

In its quest to find ambiguity in the Policy, RGP loses sight of what ambiguity is. A phrase in an insurance policy is ambiguous only if it is subject to more than one reasonable interpretation, at least one of which would result in coverage. Alternative interpretations that are unreasonable—e.g., those that ignore the context in which terms are used—do not render a contract provision ambiguous. CNA Fin. Corp. v. Alfano, 711 A.2d 1142, 1144 (R.I. 1998) ("[W]e decline to construe the disputed provision at odds with its plain meaning merely because in other contexts the term could be defined more narrowly . . . ."); Amica Mut. Ins. Co. v. Streicker, 583 A.2d 550, 552 (R.I. 1990) ("It is necessary . . . to accord equal importance to all relevant parts of the . . . policy and not simply establish ambiguity by viewing a word in isolation or by taking a phrase out of context.").

Applying these principles, an overwhelming number of courts have rejected RGP's proposed construction of "title" as unreasonable. See Moving Brief at 6-10. RGP's assertion that the methodology employed by those courts is somehow at odds with Rhode Island law is wrong. The principles those courts applied are not peculiar to any particular jurisdiction. They are core principles common to all jurisdictions. As set forth above, Rhode Island law is in accord.

RGP suggests that the courts in some of the cases cited by Charter Oak gave undue consideration to the intent of the insurers. To the extent any of those courts referenced the intent of the insurers, they did so only in the context of concluding that it would be unreasonable for any insured to conclude from the language of the policy that "title" meant "the legal right to any property." It would be unreasonable, the courts pointed out, not merely because the insurer who drafted the policy clearly intended the word "title" to carry its plain meaning, but because an insured could not reasonably conclude otherwise from the language of the policy.

RGP cites Textron, Inc. v. Aetna Cas. And Surety Co., 754 A.2d 742, 749 (R.I. 2000) for the proposition that "diversity of judicial thought as to the meaning of terms in an insurance policy is proof positive of ambiguity" and claims there is "diversity of judicial" thought as to the

meaning of the word "title." Textron is inapposite. There, the court held that "sudden" was ambiguous in the phrase "sudden and accidental" in a pollution exclusion. The court explained:

> [T]his Court has . . . held that "diversity of judicial thought [as to the meaning of terms in an insurance contract] is proof positive" of ambiguity. Zanfagna v. Providence Washington Ins. Co., 415 A.2d 1049, 1051 (R.I. 1980). Here a multitude of cases exists on both sides. Furthermore, a slim but persuasive majority of other jurisdictions holds that the word "sudden" in this type of clause is ambiguous; that is, it is susceptible to more than one reasonable interpretation . . . . [citations omitted].

Id. at 749. See also Zanfagna, 415 A.2d at 1051 (examining various constructions of phrase "integral parts" adopted by courts, following cases holding that phrase is ambiguous, and stating: "This diversity of judicial thought, in our opinion, is proof positive of the ambiguities found in the policy . . . .") (emphasis added).

In both Textron and Zanfagna, the court merely acknowledged there were numerous cases supporting each proffered construction of the terms at issue and followed what it deemed to be a persuasive majority of cases finding the terms to be ambiguous. Here, by contrast, no "diversity of judicial thought" exists. There are no "multitudes of cases . . . on both sides." There is no "persuasive majority" finding "title" to be ambiguous. The cases cited by Charter Oak uniformly apply the same persuasive reasoning in reaching the same conclusion, i.e., that "title" in the phrase "infringement of copyright, title or slogan" cannot reasonably be construed to mean "the legal right to control property." Contrary case law is conspicuously absent from RGP's Opposition. The only two cases that have reached a contrary conclusion have been uniformly rejected and harshly criticized. See Moving Brief, at 9-10. RGP offers nothing to justify reliance on those cases. Even if "diversity of judicial thought" could establish that a policy provision was ambiguous, the existence of two rogue decisions does not render otherwise uniform judicial thinking on a subject "diverse."

In any event, the Textron and Zanfagna courts did not purport to establish a per se rule that "diversity of judicial thought" is "proof positive of ambiguity." Such a rule would lead to

preposterous results. Where, as here, courts have persuasively concluded in great numbers that a contract provision is unambiguous and that a particular proposed construction is unreasonable, a logically unsupportable decision to the contrary by a single court would compel all courts considering the issue in the future to hold that the provision is ambiguous as a matter of law, regardless of how clear the language is or how unreasonable the alternative construction is.

**B. RGP'S Proposed Construction Of "Advertising" Is Unreasonable.**

RGP's argument that the "in the course of advertising" requirement is satisfied is premised on its contention that the word "advertising" is ambiguous. That contention contains fatal flaws similar to those discussed above with respect to RGP's "title" argument. RGP again rejects contextual construction, builds "a fortress" of dictionary definitions, and urges this Court to find ambiguity based on a construction of the word "advertising" that is unreasonable.

The First Circuit rejected RGP's proposed construction of "advertising" as unnatural and unreasonable in Ekco Group, Inc. v. Travelers Indem. Co. of Ill., 273 F.3d 409, 413 (1st Cir. 2001). RGP properly acknowledges that, if this Court follows Ekco, it must conclude that the "in the course of advertising" requirement is not satisfied in this case. RGP, however, observes that the First Circuit applied New Hampshire law in Ekco and contends that it would have reached a different result applying Rhode Island law. RGP is wrong.

While the First Circuit recognized that "[i]t is by no means impossible, by piecing together dictionary definitions, to read the policy language in question to provide coverage [for the insured]," the court held that it would be unreasonable to do so. Id. at 412, 415. As here, the insured in Ekco argued that "advertising" should be construed to mean "calling public attention to." The First Circuit rejected that argument, explaining: "Although the term 'advertising' has a range of meanings, the one that leaps to mind in reading this policy is what is surely the most common use: as a reference to advertising in newspaper, radio, television or other familiar media where the advertisement is an activity or item distinct from the product being advertised." Id. at

413. The Court explained that it is unreasonable to construe "advertising" in this context to mean "calling public attention to," because it would "require[] one to read at least some of the policy language unnaturally" and lead to "absurd results," explaining further that "to describe this case of product copying as a case about [the insured's] advertising is surely a very strained way to speak" Id. at 413-14.

The First Circuit would have reached the same conclusion if it had applied Rhode Island law. The Ekco court was not bound by any New Hampshire precedent construing "advertising." Rather, the court interpreted the term contextually and refused to hold that it was ambiguous based on an unreasonable alternative interpretation offered by the insured. As explained above, the interpretive principles applied by the Ekco court—i.e., that contract terms are to be construed in context and that a proffered alternative construction that is unreasonable does not render a provision ambiguous—are not peculiar to New Hampshire law. Every state, including Rhode Island, applies those principles, and they are controlling here.[3]

## II. THE POLICY EXCLUDES COVERAGE

### A. The "Knowledge of Falsity" Exclusion Applies.

RGP cites State Auto Prop. and Cas. Ins. Co. of Am. v. Travelers Indem. Co. of Am., 343 F.3d 249 (4th Cir. 2004) and Hyman v. Nationwide Fire Ins. Co., 304 F.3d 1179 (11th Cir. 2002) and argues that the "knowledge of falsity" exclusion does not apply here because "falsity" is ambiguous. In State Auto and Hyman, the underlying plaintiffs did not allege that the insured made any direct assertions of "false" or "untrue" facts. Hyman, 304 F.3d at 1195 ("[none] of the information or assertions in [the] advertisements were 'untrue' in the sense that they did not

[3] RGP also raises its diversity-of-judicial-thought-equals-ambiguity argument with respect to the proper interpretation of "advertising." As explained above, there is no support for RGP's claim that, because courts have construed a contract provision differently, this Court must declare the provision ambiguous, even if the provision, in the Court's mind, is susceptible to only one reasonable construction. This Court must examine the issued independently and, in doing so, should follow the well-reasoned decision in Ekco.

correspond to a set of known facts"); State Auto, 343 F.3d at 260 ("There is no allegation . . . that the advertisements . . . were untrue."). In that context, the courts concluded, "falsity" is ambiguous because, "although 'a court could construe the term 'false' to encompass conduct or statements arguably giving rise to a false or misleading impression, . . . such a definition . . . is significantly broader than one including only direct assertions of untrue facts, and [it is] no more plausible.'" State Auto, 343 F.3d at 260 (quoting Hyman, 304 F.3d at 1196) (alteration in original).

RGP's reliance on State Auto and Hyman is misplaced. "Falsity" is not ambiguous in the context of this case because, even under the narrow interpretation of "falsity" discussed in State Auto and Hyman, the exclusion would apply. Indeed, Support Design expressly alleges that RGP directly and intentionally asserted an untrue affiliation with Support Design.[4] Thus, even if RGP was correct that the "knowledge of falsity" exclusion applies only where there is an allegation "of a statement of fact or direct misrepresentation of the origin of the product," see Opposition, at 12, the facts here support application of the exclusion.[5]

Nothing in State Auto or Hyman suggests a different result. In fact, the Hyman court specifically addressed this type of case in dicta and concluded that the "knowledge of falsity" exclusion should apply. The court explained:

> This case would be easily resolved [in favor of the insurer] if any of the information or assertions in [the] advertisements were 'untrue' in the sense that they did not correspond to a set of known facts. If for example, [the insured] had asserted that its [products] were produced by [the underlying plaintiff], that statement clearly would be false and any advertising injury resulting therefrom would be excluded.

---

[4] See, e.g., ¶10 of Charter Oak's Statement Of Undisputed Material Facts ("Material Facts") (RGP had "knowledge of such false designation of origin or description" and "willfully promoted . . . the sale of its Counterfeit Chairs . . . so as to designate falsely Support Design as the origin."); id. (RGP's acts are "intentional and willful"); id. ("RGP [used] the Seat Design with full prior knowledge of the . . . trademark, and . . . for the willful and calculated purpose of trading on the trademark's goodwill").

[5] Significantly, if this Court determines that "advertising" as used in the Policy means "to call attention to," then the Policy is applicable to both express and indirect assertions about a product or service. In the context of a policy covering both direct and indirect assertions about a product, it would be unreasonable to construe the term "falsity" to refer only to direct assertions of untrue facts, as opposed to direct and indirect assertions of untrue facts.

304 F.3d at 1195. Again, Support Design expressly alleges that RGP directly and intentionally asserted that the Counterfeit Chairs were produced by or affiliated with Support Design. As the Hyman court explained, such statements are "clearly . . . false and any advertising injury resulting therefrom [sh]ould be excluded." Id.

RGP also argues that the "knowledge of falsity" exclusion does not apply because the Underlying Complaint can be construed to allege accidental, as opposed to intentional, trademark infringement. First, RGP argues that, because it is possible in the abstract for a plaintiff to bring a claim pursuant to the Lanham Act for unintentional trademark infringement, Support Design's Lanham Act claims should be construed to allege accidental infringement.

RGP ignores that, in determining whether an insurer has a duty to defend, courts must focus on the facts alleged, not the labels placed on causes of action asserted in the complaint.[6] Support Design's claims are expressly premised, without exception, on allegations that RGP knowingly and intentionally committed the complained of acts. Indeed, based on the nature of the alleged relationship between RGP and Support Design, it is impossible to read the Underlying Complaint to potentially allege that RGP infringed the Trademarked Seat Design accidentally. Therefore, it is irrelevant that, in theory, a trademark infringement lawsuit premised on different facts could be based on negligent conduct.[7]

RGP also points out that some of the express allegations of "willful" and "knowing" misconduct in the Underlying Complaint are based "upon information and belief." RGP ignores

[6] See Peerless Ins. Co. v. Viegas, 667 A.2d 785, 788-89 (R.I. 1995) ("The fact that the allegations in [the underlying] complaint are described in terms of 'negligence' is of no consequence. A plaintiff, by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark."); Employers Mut. Cas. Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 216 n.2 (D.R.I. 1998) (explaining that claim in underlying complaint should not be construed to allege "something that is inconsistent with the factual allegations in the complaint").

[7] See Atl. Mut. Ins. Co. v. Terk Techs. Corp., 763 N.Y.S.2d 56, 63-64 (App. Div. 2003) ("[N]otwithstanding the fact that a violation of the Lanham Act can be unintentional, and that the complaint . . . asserts that [the insured] acted with 'reckless disregard,' we can discern no justification from the factual allegations set forth in the complaint to impose a duty to defend. . . .").

that others are not. See, e.g., ¶¶9-10 of Material Facts. Moreover, RGP cites no authority for the proposition that allegations based "upon information and belief" disregarded in determining whether a policy exclusion applies. Whether or not the allegations in the Underlying Complaint are true is irrelevant. They form the basis for the claims against RGP and, therefore, determine Charter Oak's obligations pursuant to the Policy, even if Support Design is ultimately unable to prove them. Flori v. Allstate Ins. Co., 120 R.I. 511, 513 (R.I. 1978) (explaining that an insurer's duty to defend is determined based solely on the allegations of the complaint and "irrespective of whether the plaintiffs in the tort action can or will ultimately prevail"). Regardless, RGP misses the point: This Court must conclude that the Underlying Complaint alleges only intentional misconduct not merely because the Underlying Plaintiff expressly described the conduct as "willful" and "knowing" in certain paragraphs of the Underlying Complaint, but also because the nature of the misconduct the Underlying Complaint describes in detail is inherently intentional.

**B. The "Violation of a Penal Statute" Exclusion Applies.**

RGP also argues that the "violation of a penal statue" exclusion should not apply because the Underlying Complaint can be read to allege unintentional trademark infringement. As set explained above, the Underlying Complaint can only be construed to allege that RGP intentionally infringed Support Design's trademark by trafficking in the Counterfeit Chairs.[8]

RGP also argues that the exclusion does not apply because the Underlying Complaint does not expressly label RGP's actions as a violation of 18 U.S.C. § 2320. Nothing in the exclusion suggests that it applies only where the underlying plaintiff expressly states that the insured's conduct constitutes a violation of a penal statute. Moreover, in determining whether the exclusion applies, courts must focus on the facts alleged, not legal labels. See infra n.6. The

---

[8] See, e.g., Material Facts ¶10 (RGP had "knowledge of such false designation of origin or description" and "willfully promoted . . . the sale of its Counterfeit Chairs . . . so as to designate falsely Support Design as the origin.").

factual allegations in the Underlying Complaint clearly set forth a violation of 18 U.S.C. § 2320. Accordingly, the "violation of a penal statute" exclusion bars coverage. See Moving Brief at 15.

**C. The "Breach of Contract" Exclusion Applies.**

RGP argues that the "breach of contract" exclusion does not apply because "there is no causal connection between" RGP's alleged breach of the Distribution Agreement and Support Design's claims for trademark infringement. RGP ignores the obvious nexus between RGP's alleged breach, which resulted in the termination of RGP's right to use Support Design's trademark, and Support Design's ensuing claims of infringement.

RGP makes much of the fact that Support Design does not assert a cause of action for breach of contract. Whether a claim for breach of contract is asserted is irrelevant, because the exclusion bars coverage for "advertising injury" claims arising out of breaches of contract, not breach of contract claims arising out of "advertising injury." Moreover, this Court must focus on the facts alleged, not the labels of the causes of action asserted therein. See infra n.6.

RGP attempts to distinguish the cases cited by Charter Oak on the grounds that the alleged contract breaches in those cases were themselves the infringing activity. The exclusion, however, applies not to injuries caused by offenses "that are themselves" breaches of contract, but to injuries caused by offenses "arising out of" a breach of contract. The Rhode Island Supreme Court has construed "arising out of" in this context broadly, to mean "flowing from" or "having its origin in." Am. Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1194 (R.I. 2002) (citations omitted). RGP's distinction thus fails because it is premised on an unreasonably narrow reading of the phrase "arising out of" that is contrary to settled Rhode Island law.

**D. The "Failure of Goods" Exclusion Applies.**

RGP cites Flodine v. State Farm Ins. Co., No. 99 C7466, 2001 U.S. Dist. LEXIS 2204 (N.D. Ill. March 1, 2001) for the proposition that the term "quality" is ambiguous as used in "the failure of goods" exclusion. In Flodine, the court acknowledged that "quality" could mean

"attribute," in which case the exclusion would bar coverage in cases like this, but concluded that "quality" must be construed more narrowly to mean "excellence." The court wrote:

> When read in the context of ["the failure of goods . . . to conform with advertised quality or performance"], "quality" has the more specific meaning of "excellence"; this exclusion bars coverage for claims arising from the failure of the insured's products to perform as well as advertised. . . . [The exclusion does not bar coverage for trademark infringement claims because trademarks] are primarily concerned with identifying the source or origin of goods, not how well the goods will perform.

2001 U.S. Dist. LEXIS 2204 , at *40. While the Flodine court was correct to attempt to give "quality" a contextual construction, it failed to do so. If "quality" is read as "excellence" rather than "attribute," then "quality" becomes meaningless, because anything that falls within the meaning of "advertised excellence" would also come within the meaning of "advertised performance." Indeed, the Flodine court even explained that, under its reading, the exclusion only applies to "claims arising from the failure of the insured's products to perform as well as advertised." Id. (emphasis added). The exclusion, however, does not refer only to a failure to conform "with advertised performance," but to a failure to conform "with advertised quality or performance." The word "quality" must be given meaning, see infra at 3, and if it is to have any meaning in the phrase "advertised quality or performance," it must be "attribute." Thus, only one reasonable construction of "quality" exists. This Court should reject the unpersuasive reasoning of Flodine and hold that the "failure of goods" exclusion bars coverage.

## III.
## RGP'S BREACH OF THE POLICY'S NOTICE CONDITIONS BARS COVERAGE

In Avco Corp. v. Aetna Cas. & Sur. Co., 679 A.2d 323 (R.I. 1996), the Rhode Island Supreme Court affirmed a trial court's judgment that an insured manufacturer was barred, as a matter of law, from recovering from its insurers because it waited two and one-half years before providing notice of the claims at issue. The court explained:

> We are certainly not inclined to conclude for purposes of this appeal that [the insured's] contractual obligation to give its insurers immediate notice

> of any "claims made" or "suits brought" is satisfied by notice thereof given some two and one-half years after a claim is made or a suit brought. We know of no judicial holding or legal authority that would equate immediate as meaning within two and one-half years thereafter.

Id. at 328. The court agreed with the trial court's conclusion that the insurer had been prejudiced as a matter of law by the two and one-half year delay because, during that time, the "scent of factual investigation" had grown cold. Id. at 329. Significantly, however, the court went on to explain that the notice-prejudice rule was inapplicable because the insured was a sophisticated corporation. See Moving Brief, at 18-19.

RGP claims that the Avco court found prejudice as a matter of law not because of the length of the unjustified delay, but because the insured had settled claims prior to providing notice. While the court did observe that "[t]he 'scent of factual investigation' . . . not only had grown cold but had been totally dissipated by [the insured's] settlements and consent agreements," Avco, 679 A.2d at 329, it never purported to change the rule that prejudice exists where notice is provided "after the scent of factual investigation grows cold" to a rule that prejudice only exists where the scent of factual investigation had been totally dissipated.[9] As in Avco, when Charter Oak finally received notice from RGP, the scent of factual investigation had grown cold, as Charter Oak could not conduct any meaningful investigation into RGP's alleged breach of the Distribution Agreement more than two and one-half years earlier or the resulting allegations of trademark infringement. Thus, Charter Oak was prejudiced as a matter of law.

In any event, Avco makes clear that an insurer need not prove prejudice where a sophisticated corporate insured breaches notice conditions. RGP argues that Avco's analysis regarding sophisticated insureds is relevant only "where the notice comes after judgment or

---

9 RGP's focus on whether the insured settled claims, rather than the insurer's inability to investigate as a result of late notice, confuses notice conditions with "no voluntary payment" provisions, which typically provide: "No insureds will, except at their own cost, voluntarily make a payment, assume an obligation, or incur any expense . . . without our consent." While the former are designed "to facilitate the timely investigations of claims," Avco, 679 A.2d at 328, the latter are intended "to prevent collusion [between an insured and a claimant] as well as to invest

settlement." Opposition, at 18 n.8. That argument cannot be squared with RGP's reading of Avco—that an insurer is prejudiced as a matter of law only where notice comes after judgment or settlement. See Opposition, at 17. If an insurer is prejudiced as a matter of law in those circumstances, the insured's sophistication is irrelevant.

RGP claims that, "[u]nder California law, when an insurer denies liability under a policy, it waives any claim that the insured did not comply with the notice provisions of the policy." Id. (citation omitted). Rhode Island, however, has no such rule. Even if it did, such a rule would not apply here because Charter Oak clearly and consistently raised the defense from the time RGP first provided tardy notice. The California Court of Appeal explained:

> The rule that failure to comply with a policy notice . . . provision is deemed waived if not promptly objected to by the insurer, is consistent with the general principle . . . that an insurer cannot deny all liability, and at the same time [invoke] a provision inserted in the policy for its benefit. . . . [T]he reason for the general rule is that, where the insurer denies all liability under the policy, the insured is misled into believing it would be futile to perform any affirmative obligation under the policy. . . . Thus, the cases in which a notice . . . provision has been deemed waived by the insurer usually involve an insured lulled by the insurer's silence into believing it had complied with the policy notice . . . provisions.

Insua v. Scottsdale Ins. Co., 104 Cal. App. 4th 737, 742-43 (2004) (citations and footnotes omitted). Thus, the rule is that an insured is excused from further performance of its notice obligations under the policy after the insurer denies coverage. That rule does not apply in situations like that presented here, where an insurer that initially denied coverage on various grounds, including lack of timely notice, seeks to enforce the policy's notice conditions with respect to an insured's failure to provide notice prior to the insurer's declination. Indeed, RGP

---

the insurer with the complete control and direction of the defense or compromise of suits or claims." Truck Ins. Exchange v. Unigard Ins. Co., 79 Cal. App. 4th 966, 976 (2000).

cannot be heard to argue that it was lulled by Charter Oak's silence into believing it had complied with the Policy's notice provisions.[10]

For the same reason, RGP's reliance on Bay Electric Supply v. Travelers Lloyds Ins. Co., 61 F. Supp. 2d 611 (S.D. Tex. 1999) is misplaced. RGP cites Bay Electric for the proposition that an insurer cannot invoke the notice conditions unless it admits coverage on all other grounds. Opposition Brief, at 15-16. The Bay Electric court never purported to establish such a draconian rule. In Bay Electric, the court wrote:

> [The insurer's] denial of coverage was not premised on late notice, but rather on its review of [the] Complaint and its conclusion that the claims . . . did not fall within the policy coverage. Thus, regardless of the timing of notice, [the insurer] would have denied coverage and was therefore not prejudiced by the timing of [the insured's] notice.

Id. at 620 (emphasis added). Whereas the insurer in Bay Electric did not deny coverage based on late notice, Charter Oak has clearly and consistently maintained late notice as a defense to coverage. See New Era of Networks, Inc. v. Great N. Ins. Co., 2003 U.S. Dist. LEXIS 14259, *23 (S.D. Tex. Aug. 4, 2003) (distinguishing Bay Electric because insurers had consistently raised notice defense). Moreover, the insured in Bay Electric delayed only five months before giving notice, whereas RGP waited more than two years before it notified Charter Oak. See Id.

## IV.
## THE KNOWN LOSS DOCTRINE BARS COVERAGE

RGP asserts that the "known loss" doctrine "looks to whether the loss itself, not just the risk of loss, was known to the insured at the policy's inception" and argues that the "known loss" doctrine does not apply to bar coverage for a lawsuit just because "the insured might have received a letter indicating a lawsuit may follow or even that a lawsuit had been filed." Opposition at 20 (citations omitted). RGP again misses the point. The "loss" at issue for

[10] RGP also states that, "in some states when an 'insurer denies coverage based on an assertion that the underlying claim is excluded from coverage, there is a presumption that the [i]nsurer did not suffer prejudice . . . ." Opposition, at 16 (citations omitted). Rhode Island law contains no such presumption.

purposes of application of the "known loss" doctrine in this case is Support Design's trademark infringement claims. See Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co., 208 F. Supp. 2d 687, 691 (S.D. Tex. 2001) ("the relevant inquiry is whether [the insureds] knew at the time they entered the insurance policy that they were engaging in activities for which they could possibly be found liable"). RGP knew of Support Design's claims prior to the inception of the policy. See ¶12 of Material Facts. Thus, the exclusion applies.[11]

RGP cannot possibly be correct that the "known loss doctrine" does not apply where "the insured might have received a letter indicating a lawsuit may follow or even that a lawsuit had been filed." Opposition, at 20. If that was so, a company, after receiving cease and desist letters and being sued for trademark infringement, could then purchase an insurance policy without disclosing the letters or the lawsuit and, nevertheless, attempt to obtain coverage under the policy.

## CONCLUSION

For the foregoing reasons, this Court should grant Charter Oak's Motion.

HIGGINS, CAVANAGH & COONEY LLP
Attorneys for Defendant

Dated: September 23, 2005

By: [signature]
James A. Ruggieri
Higgins, Cavanagh & Cooney LLP
123 Dyer Street
Providence, RI 02903
(401) 272-3500
(401) 273-8780 (fax)

Of Counsel:
William T. Corbett, Jr. (admitted *pro hac vice*)
Frederick P. Marczyk (admitted *pro hac vice*)
DRINKER BIDDLE & REATH LLP
500 Campus Drive
Florham Park, New Jersey 07932-1047

[11] See Direct Focus, Inc. v. Admiral Ins. Co., 81 Fed. Appx. 263, 265 (9th Cir. 2003) (barring coverage where insured received cease and desist letter prior to inception of policy); Matagorda, 208 F. Supp. 2d at 691 (same); St. Paul Fire & Marine Ins. Co. v. Lefton Iron & Metal Co., 694 N.E.2d 1049, 1055 (Ill. App. Ct. 1998) (barring coverage where insured had received letter from state regarding pollution prior to inception of policy).

**CERTIFICATION**

I hereby certify that on this 23rd day of September, 2005, a copy of the within was hand delivered to:

Thomas R. Bender, Esq.
Hanson Curran LLP
146 Westminister Street
Providence, RI 02903

Jan Audino
______________________________