UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RGP DENTAL, INC.

v. CA 04-445ML

CHARTER OAK FIRE
INSURANCE COMPANY

MEMORANDUM AND ORDER

This case is before the Court on cross motions for summary judgment filed by Plaintiff RGP Dental, Inc. ("RGP") and Defendant Charter Oak Fire Insurance Company ("Charter Oak"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, Plaintiff's motion is denied and Defendant's motion is granted.

I. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Cross motions for summary judgment "simply

require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (internal quotation marks and citation omitted).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

In the instant case, the court is presented with cross motions for summary judgment on undisputed facts. Where there are no significant disagreements about the basic facts, a court may treat the parties as though they have submitted their dispute as a "case stated" and decide the case as a matter of law. See EEOC v. Steamship Clerks Union, Local 1066, 48 F .3d 594, 603 (1st Cir. 1995) (citing Federacion de Empleados del Tribunal Gen. de Justicia v. Torres, 747 F.2d 35, 36 (1st Cir. 1984)), cert. denied, 516 U.S. 814 (1995).

## II. Facts

RGP is a Rhode Island corporation that manufactures and sells dental chairs throughout the United States. In April 2002, RGP contracted with Charter Oak for an insurance policy for the period of May 1, 2002 to May 1, 2003. The policy covered, among other losses, "those sums that the insured becomes legally obligated to pay as damages because of 'personal injury', 'advertising injury' or 'web site injury' to which this insurance applies." (Pl.'s Stmt. of Undisp.

Facts, Ex. B at 4.) The policy defines "advertising injury," in relevant part, as injury arising out of "[i]nfringement of copyright, title or slogan." Id. at 5.

In February, 2002, RGP received two letters from Support Design, a Swedish corporation that manufactures and sells high-end dental chairs, claiming that RGP had infringed upon its trademark. (Def.'s Stmt. of Undisp. Facts 3.) In December, 2002, RGP was served with a complaint for trademark infringement, unfair competition, and unfair trade practices by Support Design. (Def.'s Stmt. of Undisp. Facts 1-2.) In that action, (the "Underlying Action"), Support Design claims that RGP committed trademark infringement by making and selling dental chairs that incorporated Support Design's trademarked seat design. (Pl.'s Mem. Supp. Summ. J., Ex. A at 4-7.) RGP initially defended against the action itself, but ultimately notified Charter Oak of the lawsuit on August 6, 2004, claiming coverage. (Def.'s Stmt. of Undisp. Facts 4.) On August 19, 2004, Charter Oak sent RGP a letter denying coverage. (Def.'s Stmt. of Undisp. Facts Ex. B at 4.) On September 17, 2004, RGP filed a complaint for breach of contract against Charter Oak in Rhode Island Superior Court. On October 14, 2004, Charter Oak removed the suit to this Court based on the diversity of citizenship of the parties.

## III. Discussion

### 1. Choice of law

A federal court sitting in diversity applies the substantive law of the forum state, Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), including the choice of law rules. See Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975). Where, however, the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties' agreement. Borden v. Paul Revere Life Ins. Co.,

935 F.2d 370, 375 (1st Cir. 1991)(citing Moores v. Greenberg, 834 F.2d 1105, 1107 n.2 (1st Cir. 1987)).

Here, both parties agree that Rhode Island law should govern interpretation of the insurance policy. (Def.'s Mem. Supp. Summ. J. 4 n.2; Pl.'s Mem. Supp. Summ. J. 6.) The Court will, therefore, apply Rhode Island law to the instant dispute.

2. Contract interpretation

Rhode Island courts "interpret insurance policy terms according to the same rules of construction governing contracts." Town of Cumberland v. R.I. Interlocal Risk Mgmt. Trust, Inc., 860 A.2d 1210, 1215 (R.I. 2004). The courts "look at the four corners of a policy, viewing it in its entirety, affording its terms their plain, ordinary and usual meaning." Id. (citing Casco Indem. Co. v. Gonsalves, 839 A.2d 546, 548 (R.I. 2004)(internal quotation marks omitted)). When the terms of an insurance policy are found to be clear and unambiguous, judicial construction is at an end, and the contract terms must be applied as written. Amica Mut. Ins. Co. v. Streicker, 583 A.2d 550, 551 (R.I. 1990).

A threshold question, then, to judicial interpretation of contracts is whether an ambiguity exists in the contract. Id. at 552. The Rhode Island Supreme Court has consistently defined ambiguity as existing when "[the agreement] is reasonably and clearly susceptible to more than one interpretation." W.P. Assocs. v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994)(citing Gustafson v. Max Fish Plumbing & Heating Co., 622 A.2d 450, 452 (R.I. 1993)). Courts "will not indulge in mental gymnastics to read ambiguity into a policy where none is present." Town of Cumberland, 860 A.2d at 1215 (internal quotation marks omitted). "If, however, a policy's terms are ambiguous or capable of more than one reasonable meaning, the policy will be strictly

construed in favor of the insured . . ." Id.

In Rhode Island, whether an insurer has a general duty to defend its insured is determined by application of the "pleadings test." Peerless Ins. Co. v. Viegas, 667 A.2d 785, 787 (R.I. 1995). The court looks to the allegations of the underlying complaint, and if they contain facts sufficient to bring the case potentially within the coverage of the policy, the insurer must defend.[1] Nortek, Inc. v. Liberty Mut. Ins. Co., 858 F. Supp. 1231, 1237 (D.R.I. 1994); Flori v. Allstate Ins. Co., 388 A.2d 25, 26 (R.I. 1978).

Finally, a duty to defend specifically under an "advertising injury" clause is found only if the insured satisfies the following three elements:

1. The underlying suit alleged an offense defined by the policy as "advertising injury";
2. The infringing party engaged in advertising activity;
3. There was some causal connection between the advertising injury and the advertising activity.

Ekco Group, Inc. v. Travelers Indem. Co. of Ill., 273 F.3d 409, 412, 415 (1st Cir. 2001); State Farm Fire and Cas. Co. v. Steinberg, 393 F.3d 1226, 1231 (11th Cir. 2004).

Addressing the test's first prong, Plaintiff contends that the Underlying Action alleges offenses that fall within the category of "infringement of . . . title," one of the enumerated categories of "advertising injury." Interpreting the word "title" in that clause to mean "legal right of ownership," Plaintiff asserts that the policy language "infringement of . . . title" designates

---

[1]As the First Circuit has recently noted, "Rhode Island law on the scope of the duty to defend is not a model of clarity." Hartford Fire Ins. Co. v. R.I. Pub. Transit Auth., 233 F.3d 127, 131 (1st Cir. 2000). The Rhode Island Supreme Court has articulated the "pleadings test" in two different forms: (1) if the allegations bring the suit within the policy coverage; and (2) if the allegations bring the suit *potentially* within the policy coverage. In the instant case, the distinction is one without a difference, as the allegations of the underlying complaint fail to fit into even the less stringent test.

"infringement of a legal right of ownership" as an "advertising injury." (Pl.'s Mem. Supp. Summ. J. 9.) From this position, Plaintiff then offers that "Support Design's claim for unfair competition . . . is essentially a claim that RGP has unlawfully infringed on its legal right to exclusive use of the chair's design . . ." (Id. at 10.) Therefore, Plaintiff argues, the Underlying Action alleges an offense defined as an "advertising injury" in Defendant's insurance policy, and the first prong is satisfied.

In order for the alternate definition of "title" to be included in any judicial construction of that clause, Plaintiff must first show that the word "title" is ambiguous as used in that section of the policy. Plaintiff directs the Court to the dictionary definition of "title,"which produces two possible meanings, each of which, Plaintiff argues, could be an ordinary person's reasonable interpretation of the word "title." (Pl.'s Mem. Supp. Summ. J. 9.) First, "title" could mean "an identifying name or descriptive heading." (Id.) Second, "title" could mean "a legal or ownership right in something." (Id.) Reading the ambiguity in favor of the insured, Plaintiff asserts, "'[i]nfringement of title' may therefore be reasonably read to include 'infringement of either a business name *or [the ownership of] property*.'" (Id. at 10.)(citing Sentex Sys., Inc. v. Hartford Acc. & Indem. Co., 882 F. Supp. 930, 944 (C.D. Cal. 1995)(alteration and emphasis in original)).

"Because ambiguity lurks in every word, sentence, and paragraph in the eyes of a skilled advocate . . . the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, *not in a hypertechnical fashion, but in an ordinary, common sense manner*." Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc., 852 A.2d 535, 542 (R.I. 2004)(citing Textron, Inc. v. Aetna Cas. and Sur. Co., 638 A.2d 537, 541 (R.I. 1994)). Any word will produce multiple dictionary

definitions; the test is not whether there exist alternate meanings but whether there exist *reasonable* alternate meanings. W.P. Assocs. v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994). The word "title" merits at least 10 distinct definitions in Webster's Dictionary, Merriam-Webster's Collegiate Dictionary 1238 (10th ed. 1994), but only one of these is reasonable when the phrase "infringement of copyright, title or slogan" is read in an ordinary, common sense manner. Only by isolating the word "title" and subjecting it to hypertechnical definition does Plaintiff arrive at ambiguity and an alternate meaning. In Rhode Island, a court is bound to look at the whole document in its entirety and give its language its plain, ordinary and usual meaning. Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc., 852 A.2d 535 (R.I. 2004). .

Case law does not support Plaintiff's interpretation. The "litigation explosion" set off by the "advertising injury" clause, Winklevoss Consultants, Inc. v. Fed. Ins. Co., 991 F. Supp. 1024, 1026 (N.D. Ill. 1998), has produced an overwhelming number of cases rejecting Plaintiff's position. See, e.g., U.S. Test, Inc. v. NDE Envtl. Corp., 196 F.3d 1376, 1381 (Fed. Cir. 1999) (applying Louisiana law); ShoLodge, Inc. v. Travelers Indem. Co. of Ill., 168 F.3d 256, 259-60 (6th Cir. 1999) (applying Tennessee law); United Nat. Ins. Co. v. SST Fitness Corp., 182 F.3d 447, 452 n.2 (6th Cir. 1999) (applying Ohio law); Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc., 97 F. Supp. 2d 913, 921-25 (S.D. Ind. 2000) (applying Indiana law); Gencor Indus. v. Wausau Underwriters Ins. Co., 857 F. Supp. 1560, 1564 (M.D. Fla. 1994); Atlantic Mut. Ins. Co. v. Brotech Corp., 857 F. Supp. 423, 429 (E.D. Pa. 1994) (applying Pennsylvania law), aff'd, 60 F.3d 813 (3d Cir. 1995); St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys., Inc., 824 F. Supp. 583, 586 (E.D. Va. 1993) (applying California law), aff'd, 21 F.3d 424 (4th Cir.

1994); Maxconn Inc., v. Truck Ins. Exchange, 74 Cal. App. 4th 1267, 1274-79 (1999) (applying California law); FileNet Corp. v. Chubb Corp., 735 A.2d 1203, 1216 (N.J. Super. Ct. 1997) (applying New Jersey and California law), aff'd, 735 A.2d 1170 (N.J. Super. Ct. App. Div. 1999).

Plaintiff offers two cases in support of its position, one from a District Court in California, the other from a District Court in Mississippi. Sentex Sys., Inc. v. Hartford Acc. & Indem. Co., 882 F. Supp. 930 (C.D. Cal. 1995), aff'd on other grounds, 93 F.3d 578 (9th Cir. 1996); Merchants Co. v. Am. Motorists Ins. Co., 794 F. Supp. 611 (S.D. Miss. 1992). Both cases have been consistently disapproved of by other courts. The Sentex court's interpretation of "title" as "property right" has been rejected by the California Court of Appeal. Maxconn, 74 Cal. App. 4th at 1276. Other California courts have questioned whether the section of Sentex interpreting "title" is good law: "this holding portion of Sentex does not appear to be good law in the Ninth Circuit. First, in affirming the Sentex decision, the Ninth Circuit never reached the issue of title infringement. Second, the broad definition of 'infringement of title' adopted in Sentex appears to be inconsistent with other state and federal cases within the state." Zurich Ins. Co. v. Sunclipse, Inc., 85 F. Supp. 2d 842, 855 (N.D. Ill. 2000)(citation omitted). The Merchants decision has also been rejected as an isolated, unrepresentative opinion. See, e.g., Brotech, 857 F. Supp. at 429; Owens-Brockway Glass Container, Inc. v. Int'l Ins. Co., 884 F. Supp. 363, 368 n.10 (E.D. Cal. 1995).

The Rhode Island Supreme Court has not definitively ruled on the question of whether "title" is ambiguous in an "advertising injury" insurance clause. Only two courts have applied Rhode Island law on this question. In Nortek, Inc. v. Liberty Mutual Insurance Co., 858 F. Supp.

1231, 1237 (D.R.I. 1994), the District Court of Rhode Island adopted the report and recommendation of the Magistrate Judge, who found that an underlying action's allegations of "circulating advertising materials in a catalogue that contained photographs of [a competitor's] products, could 'possibly' be covered under designated offense number one . . . or it could 'possibly' be covered under designated offense number three, . . . or designated offense number four, 'infringement of copyright, title or slogan.'" Because the holding does not specify which of the offenses the court believed were implicated, nor does it indicate whether the possible infringement was of copyright, title or slogan, there is no way of knowing whether the court endorsed the view that "title" could mean "property right" in its ruling. In Lumbermens Mutual Casualty Co. v. Dillon Co., Inc., 9 Fed. Appx. 81, 84 (2nd Cir. 2001), an unpublished decision, the Second Circuit predicted that the Rhode Island Supreme Court would likely follow the "numerous courts and jurisdictions . . . conclud[ing] that trademark infringement is not included under 'infringement of title.'"

Plaintiff's tortured reading of the contract language leads to the absurd result that, under the "infringement of title" clause, "insurance companies could be liable . . . for an insured's theft, misappropriation or conversion of any personal property of another if such were then advertised for sale." Brotech, 857 F. Supp. at 429. A plain and ordinary meaning interpretation of the word "title" in the relevant clause reveals no ambiguity. When there is no ambiguity in the contract language, a court will enforce its terms as written. Streicker, 583 A.2d at 551. In order to trigger a duty to defend under an "advertising injury" clause, the underlying suit must allege facts falling potentially within an "advertising injury," as defined by the contract. The plain, ordinary meaning definition of the word "title" precludes an interpretation of the "advertising injury"

clause in which "infringement of title" is read to mean "infringement of legal rights." Therefore, the claims of trademark infringement, unfair competition, and unfair trade practices in the underlying complaint do not allege facts potentially within the ambit of the "infringement of title" clause, and consequently, they do not fall within the definitions of "advertising injury" in the contract. Because the requirements of the first element of the three-part test for the defense of an "advertising injury" claim are not met, Defendant is under no duty to defend Plaintiff in the Underlying Action. Without a duty to defend, Plaintiff's allegations of breach of contract fail.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

SO ORDERED.

Mary M. Lisi

Mary M. Lisi

United States District Judge

November 8 , 2005